THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY LEE PETTIS, Defendant-Appellant.

(No. 12160;

Fourth District—November 27, 1974.

624

John F. McNichols and Theodore A. Gottfried, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (James W. Jerz and Charles D. Sheehy, Jr., both of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant was convicted of involuntary manslaughter following a jury trial upon charges of murder, voluntary manslaughter and involuntary manslaughter. He appeals the conviction and the sentence of 3 to 7 years.

It is urged as reversible error that the court improperly instructed the jury as to the definition of involuntary manslaughter, that the court refused to instruct upon defendant's theory that the killing was accidental, that defendant was not proven guilty beyond a reasonable doubt and that there was an abuse of discretion in denying probation.

The decedent, Jesse Pettis, was an older brother of defendant. The former was 28 years of age, 5 feet 6 inches tall and weighed 150 pounds. Defendant was 20 years of age, 6 feet 2 inches tall and weighed 150 pounds. A brother, David Pettis, aged 18, was a witness to most of the events preceding the homicide which occurred at the home of a sister, Mrs. Moore. Decedent died within minutes following the penetration of his heart by a homemade "spear."

The record discloses that Jesse Pettis met defendant and the brother, David, at about 5:30 P.M. on August 11, 1972. Jesse demanded that defendant pay him a debt of $30. It appears that defendant had the money but wished to use it to purchase an automobile. The dispute continued at various times and places throughout the evening. On one occasion decedent struck defendant in the mouth with his fist with enough force to loosen or break a tooth. The parties met again at the home of Mrs. Moore, sometime after 10 o'clock, and the argument continued.

David testified that as defendant was seated on a couch, decedent again threatened to knock his teeth out, whereupon defendant kicked over a coffee table between them and took the homemade spear from the wall, telling decedent to stay away. As the argument proceeded, Mrs. Moore left the house to call the police. David testified that decedent grabbed the spear from defendant with both hands. On cross-examination he stated that decedent "snatched" the spear. At this time David was standing in the adjacent kitchen. He testified that he did not see defendant make any threatening move and that he did not see the decedent stabbed by the spear. Defendant did not testify. Defendant and David ran from the house. Subsequently, David was asked by the police where defendant was and he rode with them to look for defendant, but did not tell where he was. Ultimately, defendant surrendered himself at the police station. No other witness could testify concerning the events with the spear. The record shows that there were blood stains from the front door of the house to the back door in the kitchen where the body of decedent was found. The evidence shows that the furniture in both the living room and in the kitchen was overturned and tumbled about.

The evidence is that after fleeing from the Moore house, defendant that evening told his mother: "I just cut Jesse but I don't know how bad." When defendant learned of the death of his brother, he stated to David: "He [defendant] didn't mean to do it."

■■ Defendant presented to the jury both theories of self-defense in the use of the spear and accident during a struggle for such weapon. The jurors saw and heard the witnesses and had occasion to weigh such testimony in the light of the testimony of events preceding the death, the physical evidence suggesting a struggle in the two rooms of the house, together with the statements made by defendant in the nature of admissions. An inculpatory admission may be sufficient to sustain a conviction. (*People v. Puckett*, 6 Ill.App.3d 206, 285 N.E.2d 258.) The record discloses issues of fact for the jury, and we are not persuaded that there was a failure of proof beyond a reasonable doubt.

The court gave an instruction defining involuntary manslaughter in the language of IPI—Criminal 7.07. He contends that such instruction was error in that it did not contain the statutory language "without legal justification" found in section 9—3 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—3).[1] The contention, however, is without merit, for the record shows that rather than objecting to such instruction trial counsel expressly agreed that it should be given. Again, the issues instruction concerning involuntary manslaughter was in the form and substance of IPI—Criminal 25.05, which includes as an element that defendant was not justified in using the force which was used. Thus, the series of instructions actually included the element of justifiable use of force for which defendant contends. We find no prejudice to defendant.

■■ There should be no implication from this conclusion that the words "without legal justification" are to be considered a necessary element of the offense of involuntary manslaughter. (See *People v. Harvey*, 3 Ill. App.3d 774, 278 N.E.2d 417 (aff'd, 53 Ill.2d 585, 294 N.E.2d 269.) We note that the offense of involuntary manslaughter is stated in terms of reckless conduct. Section 4—6 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 4—6) defines "recklessness".[2] IPI—Criminal 5.01 instructs the jury upon the definition of "recklessness" in substantially the language

---

[1] "(a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

[2] "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. * * *"

of the statute and is to be given, as it was here, when the definition of involuntary manslaughter (IPI—Criminal 7.07) is given. Upon such definition of the offense, a claim of self-defense is inconsistent and contradictory in terms. *People v. Mitchell,* 12 Ill.App.3d 960, 299 N.E.2d 472.

■■ Defendant urges that the court erred in refusing to instruct the jury concerning accident or misadventure in the following language:

> "When a person dies from an accident or misadventure, no other person is guilty of a crime."

*People v. Witherspoon,* 55 Ill.2d 18, 302 N.E.2d 3, holds that such instruction need not be given and is dispositive of the issue.

Defendant argues that the trial court abused its discretion in refusing to grant probation to defendant. It is said that the court's colloquy at sentence shows a predisposition in the trial court to deny probation. A more correct reading of the colloquy is that the court denied probation because of his view of the seriousness of the offense. Such is a proper factor to be considered by the court. *People v. Hamby,* 6 Ill.2d 559, 129 N.E.2d 746.

■■ The trial court heard the testimony both at trial, upon the probation hearing and at a hearing in aggravation and mitigation. He thus was well informed both as to the offense and the background of the defendant. It is the function of the trial court to exercise discretion in granting or denying probation, and such discretion will be affirmed when it is predicated upon adequate information concerning the offense. (*People v. Pelikan,* 6 Ill.2d 275, 128 N.E.2d 741.) It does not appear that the court acted arbitrarily or in abuse of discretion. *People ex rel. Ward v. Moran,* 54 Ill.2d 552, 301 N.E.2d 300.

The case is on direct appeal and under the rule of *People v. Chupich,* 53 Ill.2d 572, 295 N.E.2d 1, we find that this sentence is not in accord with the provision of (Ill. Rev. Stat. 1971, ch. 38, par. 1005—8—1(c)(4)), which provides that for a Class 3 felony, the minimum term of imprisonment shall not be greater than one-third of the maximum.

■■ Upon the authority of Supreme Court Rule 615 to modify sentence the minimum sentence is modified to conform to the statutory provision, and as modified, the minimum sentence shall be not less than 2 years and 4 months and the maximum shall not be more than 7 years.

With the sentence so modified the conviction is affirmed and the cause is remanded to the circuit court of Sangamon County with directions to issue an amended mittimus reflecting such modification.

Affirmed with directions, cause remanded with directions.

SMITH, P. J., and SIMKINS, J., concur.