THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALLEN McNAIR, JR., Defendant-Appellant.

(No. 74-91; ▮▮▮▮▮▮▮)

Fifth District—July 21, 1975.

604

Paul Bradley and James R. Streicker, both of State Appellate Defender's Office, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendant-appellant, Allen McNair, Jr., was convicted after a bench trial of murder in St. Clair County and was sentenced to serve from 14 to 18 years. On appeal, defendant contends that the trial court erred in refusing to permit testimony of decedent's reputation for violence and prior acts of misconduct toward the defendant. Defendant also asks that the offense be reduced from murder to voluntary manslaughter.

The decedent, defendant's father, arrived at the family home on the date of the offense in an inebriated condition. He left, but returned some 3 hours later in an even worse condition. Despite his extreme intoxication, he continued to drink. Decedent ordered defendant's brother to find defendant and bring him home. Although defendant was reluctant to return, he did so. While defendant was washing dishes in the kitchen, decedent displayed abusive language toward defendant and his siblings and was apparently physically abusive toward defendant's mother. Two of defendant's brothers testified that decedent did not want defendant to leave the house and that a fight would occur if he tried. Defendant

went to his parents' bedroom and got his father's gun. He testified at trial that decedent had previously taken the gun when drunk and fired out the back door and on one occasion had shot at defendant's brother. Defendant testified that he intended to take the gun out of the house to protect his mother and siblings. As he attempted to leave he was approached by decedent.

In a voluntary confession given to police after the incident, defendant had stated that when decedent advanced toward him, he (defendant) had fired an unspecified amount of shots at his father but that his father had struck him several times before he fell. At trial, however, he recanted this version and stated that he and his father had fought and that the gun went off during the altercation. The evidence was conflicting as to the number of shots heard by the family, but the coroner's report established that at least four and perhaps six shots were fired into decedent. In addition, two of the shots were fired into decedent's back, raising the possibility that they were fired after decedent fell. Defendant's brother testified that his father was shot twice after falling to the floor.

■■ Defendant first contends that the court erred in refusing to permit testimony by defense witnesses of decedent's violent disposition and prior acts of violence or threats of violence toward defendant. Before evidence can be introduced of violent disposition of the decedent or prior threats or misconduct by the deceased against the defendant, preliminary testimony must establish an act of present aggression by the decedent. (*People v. Adams*, 25 Ill.2d 568, 185 N.E.2d 676 (1962).) Mere threats to injure or even kill are not enough to establish the decedent as the aggressor if he did not act upon those threats. (*People v. Golson*, 392 Ill. 252, 64 N.E.2d 462 (1946).) Moreover, there must be evidence from which, if found credible, the trier of fact could find that the deceased was the assailant on the occasion of his demise before any vicious or wicked disposition of the decedent may be shown. *People v. Adams.*

■■ In the instant case, there was no evidence that decedent acted violently toward the defendant at any time prior to defendant's obtaining the gun. At that time, decedent, at most, merely advanced toward defendant. The purpose of this approach may have been to do violence, but may also have been in response to defendant's possession of the weapon. Regardless whether the court believes defendant's relation of the incident at trial or the prior confession, the evidence established that defendant was the aggressor. And, in any event, the trial court did receive evidence of decedent's prior behavior from defendant himself. Much of this testimony was necessary to establish defendant's theory of the case and the reason why he had the gun. Given those circumstances,

we cannot say that defendant was denied a fair trial by the court's refusal to accept additional testimony of decedent's character.

■■ Defendant next contends that he was not in possession of the requisite mental state to commit murder and that the degree of the offense should therefore be reduced. A person who kills an individual without lawful justification commits murder, if, in performing the acts which cause the death:

> "(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
>
> (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another * * *." (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(1) and (2).)

Defendant denied that he intended to kill his father. But the trial court believed, and we cannot disagree, that defendant intended to do the act by which his father died, that is, that he intended to pull the trigger. In addition, he used a deadly weapon. Such circumstances may be considered in determining the intent as defined in the statutory language above. *People v. Koshiol,* 45 Ill.2d 573, 262 N.E.2d 446 (1970); *People v. Coolidge,* 26 Ill.2d 533, 187 N.E.2d 694 (1963).

■■ Conversely, we do not believe that the evidence established the elements of voluntary manslaughter. Section 9—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 9—2) allows a finding of voluntary manslaughter where the unlawful killing results from "serious provocation," in this case by the decedent, or where defendant kills while acting in the belief that his acts are in defense of himself or others but the belief is unreasonable. "Serious provocation" is defined as "conduct sufficient to excite an intense passion in a reasonable person." While there is no doubt that emotions ran high during the incident, the evidence before the trial court did not justify a finding of serious provocation. Prior to defendant's obtaining the weapon, decedent had done nothing which, in the mind of a reasonable man, would cause the response which occurred. When decedent saw his son with the gun, his natural response would have been to retrieve it. We do not believe that defendant acted in such an intense passion as to negate the intent necessary for murder. Nor could defendant in any way have been acting in self-defense. The trial court could have believed the confession taken from defendant shortly after the killing in which defendant admitted having fired at decedent from a distance of 5 feet. Decedent was unarmed and made no physical gesture which could have put defendant in fear of death or serious bodily injury. And both self-defense and accidental death are negated by the evidence that decedent was shot several times, even while lying on the floor.

We can only conclude that the court had before it sufficient evidence that defendant committed the offense of murder. The judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., and G. MORAN, J., concur.