THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DEBORAH OWENS, Defendant-Appellant.

First District (4th Division) No. 62420

Opinion filed February 3, 1977.

James Geis and Brenda E. Richey, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

On January 11, 1974, defendant, Deborah Owens, shot and killed Laurence Richardson. Following a bench trial, defendant was convicted of murder. (Ill. Rev. Stat. 1973, ch. 38, par. 9—1.) She was sentenced to the Department of Corrections for a term of 14 to 28 years. Defendant appeals, contending: (1) The State failed to prove beyond a reasonable doubt that defendant was not acting in self-defense when she shot the decedent. Alternatively, defendant argues that the evidence, at most, can only support a conviction for voluntary manslaughter. (2) The court erred in refusing to admit testimony of the deceased's prior threats towards the defendant.

At trial, two occurrence witnesses, both of whom were employees at a drugstore located in Chicago, testified for the prosecution. The testimony of Lillian Taylor, a cashier, and Albert Jude, a security guard, was substantially the same: At approximately 9:45 p.m. on January 11, 1974, defendant entered the drug store and approached the counter which Taylor was attending. Taylor asked the defendant whether she could help her. Defendant did not respond. A few minutes later, the deceased, Laurence Richardson, entered the store, joined defendant at the counter, and asked her what she wanted. Defendant walked away from the counter to another part of the store. When she returned to the counter, Richardson touched defendant's shoulder. Defendant then stated, "I told you to keep your hands off me" and walked out of the store. Richardson stated to Taylor that the only thing defendant wanted was a butcher knife. A moment later, Richardson walked away from the counter and stood with a few other persons.

Defendant then returned to the store and fired two shots. Jude saw Richardson lying on the floor and defendant standing near him, a gun in her hand. Jude ordered her to drop the gun. She complied and Jude retrieved it. After Richardson had fallen, defendant leaned over and told him to get up and that she was sorry. She asked someone to call an ambulance. When the police arrived, Jude turned the gun over to them and told them that "the girl" had shot Richardson. Jude did not notice whether defendant had a gun when she entered the store the first time, but observed it upon her return. Both witnesses testified that after the shooting defendant was not visibly scratched, cut or injured.

Officer Pelligrini of the Chicago Police Department testified that on January 11, 1974, at about 9:50 p.m., he and his partner responded to a call to proceed to 321 W. 63rd Street and upon arriving, found Jude detaining the defendant. Jude handed them a gun which he stated had been recovered from the defendant. The officer noticed no cuts, scratches or bruises on defendant's face or body. Her hair was not mussed and her clothing was intact.

Pelligrini placed defendant under arrest after Jude told him what had happened. Pelligrini also stated that he spoke to a woman that night whom he believed to be Lillian Taylor, who told him that "she didn't see anything."

Charles and Carlon Ford, who were with the victim and defendant, testified on behalf of defendant. They stated that prior to arriving at the drugstore the group of four had been drinking and playing records and had then gone to a wake. After leaving the funeral home, they went to the drugstore to purchase more liquor. They saw Richardson push defendant when the two left the car to enter the drugstore. Mr. Ford testified that he

didn't think anything of it. Mrs. Ford, who remained in the car, never saw defendant leave the drugstore. Neither observed the actual shooting.

Elizabeth Owens, defendant's mother, testified on behalf of her daughter. She was permitted to recount an incident where she had seen Richardson "tussling" with her daughter approximately four months before. However, the court sustained the State's hearsay objection regarding the contents of a certain telephone conversation between Richardson and Elizabeth Owens which had taken place 11 days before the shooting. During the conversation Richardson allegedly had made threats concerning defendant.

Defendant testified on her own behalf. She had known the deceased for approximately seven years and had gone out with him socially for over a year. He had beaten her once during that time. She recounted the events prior to the shooting as follows: Defendant, Richardson and the Fords played records, attended a wake, and drove to the drugstore. At some point between leaving the wake and entering the drugstore, Richardson had knocked her down in the snow. Upon arriving at the drugstore, she went in first, and Richardson and Charles Ford followed. She went to the counter, whereupon Richardson joined her and asked her to pay him some money she owed. She replied that she would pay him when she was paid. Richardson demanded his money immediately and told her to buy a knife because she would need it when she stepped out the door. She told him to leave her alone.

As she approached the door, Richardson grabbed her from behind, shoved her against the wall, and began choking her. She screamed the entire time and tried to fight him off until she turned around and shot him. She stated that she was not trying to shoot him and that she carried a gun because she had been raped and needed protection. She admitted that she did not see the victim with any weapon.

After the shots were fired, defendant asked someone to call an ambulance. She took off her coat and propped it under Richardson's head. Defendant claimed to have suffered a swollen lip and scratches on her neck, but did not show her injuries to anyone. She also stated that her coat collar had been torn in the struggle.

After closing arguments, the trial court rejected defendant's assertion that she acted in self-defense and found her guilty of murder.

Initially, defendant contends that the State failed to sustain its burden of proving beyond a reasonable doubt that she was not acting in self-defense when she shot Laurence Richardson.

Section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 7—1) provides in part:

"A person is justified in the use of force against another when and

to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another * * *."

■■ It has been consistently held that the question of whether a killing is justified under the law of self-defense is a question of fact. (*People v. Muldrow* (1975), 30 Ill. App. 3d 209, 332 N.E.2d 664; *People v. Spriggs* (1974), 20 Ill. App. 3d 804, 314 N.E.2d 573.) Under the statute, the trier of fact must determine: (1) whether the defendant's resort to force was reasonable under the circumstances and (2) whether the amount of force used was commensurate with the force encountered. *People v. Wood* (1974), 24 Ill. App. 3d 15, 320 N.E.2d 32.

■■ We note that "[a] finding by the trial court as to whether or not defendant's belief was reasonable will not be reversed unless it is clear that the finding was erroneous." (*People v. Wood* (1974), 24 Ill. App. 3d 15, 20, 320 N.E.2d 32, 35.) Furthermore, "[t]he judgment of the trial judge will not be disturbed on review unless the evidence is so unsatisfactory as to leave a reasonable doubt of guilt." *People v. Jennings* (1976), 37 Ill. App. 3d 982, 985, 347 N.E.2d 421, 423.

■■ While the burden of proof beyond a reasonable doubt remains with the State when the affirmative defense of self-defense is raised (*People v. Halley* (1973), 13 Ill. App. 3d 719, 300 N.E.2d 645), we agree with the trial court that this burden was met. The only evidence offered in support of defendant's self-defense contention was defendant's own testimony. The trial court could have reasonably chosen to disbelieve the defendant's account of events, in light of the evidence offered by the State. While defendant testified that the deceased choked her for one minute and that she screamed throughout the attack, the State produced two witnesses who were standing close by at the time of the occurrence, neither of whom witnessed a struggle nor heard screams.

■■ This conflicting testimony created an issue as to the credibility of the witnesses. The trial judge, sitting without a jury, is in the best position to determine the credibility of the witnesses before him and the reviewing court, unable to view the demeanor of the witnesses, will not substitute its own judgment for that of the trier of fact. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) Furthermore, the fact that deceased pushed defendant prior to entering the store, several minutes before the shooting, could hardly justify a reasonable apprehension on the part of defendant that her life was in jeopardy and the use of deadly force was necessary for her protection.

Defendant next urges that even if this court finds that she did not act in self-defense, we should reduce her murder conviction to voluntary manslaughter since she was acting under an unreasonable belief that she was justified in killing decedent under the circumstances. Presumably defendant is relying on section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—2(b)) which provides:

> "(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

The principles of article 7 applicable to voluntary manslaughter are the same as those applicable to self-defense. That is, the amount of force used must be commensurate with the amount of force encountered and the defendant must be acting pursuant to a belief that his or her actions are justified. Under a theory of self-defense, the defendant is acting pursuant to a reasonable belief, while in voluntary manslaughter this belief is unreasonable. See *People v. Davis* (1975), 33 Ill. App. 3d 105, 337 N.E.2d 256.

■■ The record in the instant case does not support an inference that defendant believed, albeit unreasonably, that she was justified in shooting Richardson. Again, it is within the province of the trial judge to determine the credibility of the witnesses, including the belief, if any, held by defendant. The trial court could have properly concluded that defendant did not hold any belief that it was necessary to kill decedent in order to protect her own life. She was in a public place with several others present. The alleged choking was not corroborated by anyone including a security guard whose duty it was to observe any incidents in the store. While Richardson commented that defendant would need a knife, this statement was made after defendant left the store. Further, Richardson was unarmed, a fact known to defendant. The only corroborated physical contact initiated by Richardson was a touch on the shoulder, and a push, several minutes before. Therefore, it was reasonable for the trial court to find that defendant's actions were deliberate, voluntary and intentionally destructive of another human's life. (See *People v. Gamboa* (1975), 30 Ill. App. 3d 242, 332 N.E.2d 543.) While we recognize that the tragedy of a killing is not restricted to the victim alone, we necessarily must find from the evidence in this case that no basis exists for the court to find defendant guilty of the lesser offense of voluntary manslaughter. The court properly found defendant guilty of having committed the crime of murder. Ill. Rev. Stat. 1973, ch. 38, par. 9—1.

■■ Lastly, defendant argues that it was reversible error for the court below to refuse to admit the testimony of defendant's mother regarding

threats made by the deceased during a telephone conversation 11 days before the shooting. While the court sustained the State's objection on the grounds of hearsay, defendant points to the well-recognized exception to the hearsay rule noted in *People v. Stombaugh* (1972), 52 Ill. 2d 130, 139, 284 N.E.2d 640, 645:

> " * * * where, in a prosecution for homicide, an accused relies upon self-defense and evidence has been introduced from which the jury could believe that the deceased was the assailant, then evidence concerning the violent temper and disposition of the deceased and his prior threats to the defendant is admissible as tending to show the circumstances confronting the defendant, the extent of his apparent danger, and the motive by which he was influenced. Such circumstances are relevant in that they tend to show the defendant's state of mind. [Citations.]"

■■ While we do not dispute defendant's statement of the applicable rule of law, we believe that the trial court properly ruled upon the issue as it was presented. The State's objection arose and was sustained during the direct examination of defendant's mother, as part of the defense's case in chief. Prior to that time, the only evidence offered to establish that the deceased was the aggressor was the pushing incident outside and the minor physical contact while in the drugstore. This preliminary testimony was insufficient to lay a foundation that the deceased was the aggressor. (See *People v. McNair* (1975), 30 Ill. App. 3d 603, 332 N.E.2d 696.) The more probative testimony regarding the alleged choking was presented by the subsequent witness, the defendant. It was incumbent upon the defense at that later time to offer the evidence of the telephone conversation between the deceased and defendant's mother. Furthermore, we note that at no time was the exception to the hearsay rule brought to the trial court's attention. Therefore, the court ruled upon the admissibility of the testimony as it was presented for its consideration—when a foundation for admission of the testimony was lacking, and the only question presented was whether the testimony constituted hearsay.

■■ In *People v. Johnson* (1969), 108 Ill. App. 2d 150, 247 N.E.2d 10, a case relied upon by defendant, the court held that it was reversible error to unduly restrict the defendant's account of his state of mind just prior to stabbing the decedent. In *Johnson*, the trial court had sustained a general objection to a question posed to the defendant regarding what he thought when the deceased rushed towards him. In the instant case, defendant was not at all restricted in testifying to prior aggressive acts by the decedent that would bear on her state of mind. She testified to the pushing incident, to the deceased's statement regarding the purchase of a knife, and to a previous beating that occurred during their relationship.

We find that the exclusion of defendant's mother's testimony was proper at the time it was offered and further that defendant was given sufficient latitude in her own testimony to show the aggressive nature of the decedent.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

DIERINGER, P. J., and ROMITI, J., concur.