THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MIGUEL ANGEL ORTIZ, a/k/a Peter Rivera, Defendant-Appellant.

First District (3rd Division)   No. 77-821

Opinion filed September 27, 1978.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Linda Ann Miller, and Michael J. Boyle, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court: Miguel Angel Ortiz was charged, by information, with the murder of Jose Guevera. (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(1), 9—1(a)(2).) Ortiz was tried before a jury and was convicted of involuntary manslaughter. (Ill. Rev. Stat. 1975, ch. 38, par. 9—3(a).) He was sentenced to a term of 1 to 5 years in the penitentiary. Ortiz now appeals his conviction.

Officer Terrence Gainer of the Chicago Police Department testified for the State. On May 13, 1976, he took an oral statement from Ortiz at which time Ortiz stated that he shot Guevera in self-defense. Ortiz then related that on the night of May 12, 1976, he had been drinking in a tavern. At approximately 2:30 a.m. he left the tavern and went to his automobile. Guevera and three other men, Victor Colon, Julio Figueroa and a man named Cruz, were also in the car. While riding in the automobile, Guevera called Colon a "faggot." Ortiz responded by telling Guevera to stop talking like that in his car. After a brief argument between Ortiz and Guevera, Ortiz stopped the car and the men got out. A fist fight ensued, during the course of which Guevera hit Ortiz with the lid from a garbage can. Figueroa, Colon and Ortiz then reentered the car and drove off.

Ortiz took Colon home and then proceeded to the residence of Figueroa's sister, which was located on North Elizabeth Avenue in Chicago. After the two men got out of the car, Guevera shot at them. Ortiz ran to the west side of Elizabeth Avenue where he crouched behind some cars. Guevera was on the east side of the street and Ortiz saw him raising a gun. Some unknown person then threw Ortiz a gun and, as he saw Guevera raising his arm, he fired the gun. After Ortiz saw Guevera fall, he turned and ran down a gangway.

Gainer testified that in the presence of Assistant State's Attorney Donald Devlin, Ortiz again described the occurrence. This second statement by Ortiz substantially repeated the same facts that he had previously related to Gainer. However, Ortiz then claimed that Guevera chased him down the street before Guevera fired a shot at him. Ortiz also indicated that they were standing face-to-face when the shooting occurred.

Assistant State's Attorney Donald Devlin also testified for the State. His testimony essentially corroborated Gainer's testimony on Ortiz' statement to Devlin. Victor Colon, another State's witness, related the events of the fist fight and his version was substantially the same as that related by Officer Gainer.

Dr. Robert Stein, a pathologist, testified that an autopsy on Guevera's body revealed a single bullet wound at the back of the right chest. The path of the bullet was from right to left and angulated upward and perforated the right lung and heart. Dr. Stein was of the opinion that such a wound was inconsistent with a set of facts in which the deceased was standing face-to-face with his assailant but was consistent with a set of facts where the deceased had his back to the assailant. He also stated that the wound was consistent with a situation where the deceased party, while facing the shooter, took an evasive action immediately before the bullet struck him.

Ortiz testified in his own behalf. The version of the occurrence he related at trial coincided with the testimony of the State's witnesses, up to the point where he and Figueroa arrived at the Elizabeth Avenue location. Ortiz then testified that after arriving at Elizabeth Avenue, he and Figueroa began walking towards Figueroa's sister's home. Guevera then approached them with a pistol and announced that he was going to kill them. Guevera fired the gun at the defendant and one bullet grazed the defendant's hand. Ortiz then ran to the other side of the street with Guevera chasing him. Guevera re-crossed the street and pointed the gun at Ortiz. At that point Figueroa threw the defendant a gun. Then, as he began to run, the defendant turned and fired two shots. On cross-examination Ortiz explained that when he talked to the police he did not disclose the fact that Figueroa had given him the gun because he wanted to protect Figueroa. He also stated that when he fired the gun, it was pointing in the air and he denied telling the police that he had fired the pistol directly at Guevera. He further testified on cross-examination that he only fired once.

During the direct examination, Ortiz was not allowed to testify as to a conversation he had with Figueroa after the fist fight but prior to the shooting. Defense counsel later made an offer of proof which disclosed that Figueroa had told Ortiz that Ortiz had made a mistake "because [Guevera] is a killer. He has shot and killed Carmelo."

Ortiz stated that after the incident he went to his home and told his wife what had occurred. They then left and spent the night in their automobile somewhere on Grand Avenue in Chicago. The next morning they went to his wife's sister's home where they spent the night. The following day, the defendant went to the police because he heard that they were looking for him.

Ortiz' mother, Dionisia Arroyo, also testified for the defendant. She

stated that the police contacted her and that she told them where her son lived. She was with her son at the police station while he was being questioned and the defendant, at that time, showed both her and the police a scab on his hand from the bullet wound he allegedly received. In rebuttal, Officer Gainer stated Arroyo told him that she did not know where her son was living. He further stated that the defendant did not state that he had been shot in the hand nor that he shot his pistol in the air.

On appeal, Ortiz raises five issues for review: (1) whether the State proved, beyond a reasonable doubt, that he was not justified in using force likely to cause death or great bodily harm, (2) whether the defendant was proven guilty of involuntary manslaughter beyond a reasonable doubt, (3) whether the jury was properly instructed on the crime of involuntary manslaughter, (4) whether the court erred in refusing to admit certain testimony by the defendant as to his state of mind, and (5) whether a "flight" instruction was improperly tendered to the jury. However, prior to reaching these questions, we must address the threshold issue of whether the defendant has waived these claims of error because he failed to raise them in a post-trial motion.

■■ In general, a criminal defendant waives any issue which he failed to raise in a post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.) However, a reviewing court may consider an issue raised by a criminal defendant which was not properly preserved if the issue presents "[p]lain error or defects affecting substantial rights" (Supreme Court Rule 615(a), Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)) or where the evidence is closely balanced. (*People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403; *People v. Pickett*; *People v. Davis* (1977), 50 Ill. App. 3d 163, 365 N.E.2d 1135.) The exercise of this authority, which provides the court with a means of moderating the harshness of the waiver rule, lies within the sound discretion of the reviewing court. *People v. Pickett*; *People v. Davis*.

■■ In the present case, there exist genuine evidentiary conflicts as to the precise events which resulted in the death of Guevera. The resolution of these conflicts have a direct bearing upon the propriety of Ortiz' conviction for involuntary manslaughter and the validity of his claim of self-defense. The evidence which the defendant contends was erroneously excluded was directly relevant to the self-defense question and the instructions which the defendant contests were capable of adversely affecting the jury's deliberations. Under these circumstances, we feel that it would be appropriate for the court to consider the questions raised by the defendant, despite his failure to present them in a post-trial motion.

The first issue raised by Ortiz is that the State failed to prove beyond a reasonable doubt that the defendant was not justified in using force likely to cause death or great bodily harm. Under section 7—1 of the Criminal

Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 7—1), the use of such force is legally justified when a person "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." Self-defense is an affirmative defense and once it has been raised by the defendant the burden of proof is on the State to disprove beyond a reasonable doubt the justification of the use of deadly force. (*People v. Owens* (1977), 45 Ill. App. 3d 1012, 360 N.E.2d 481; *People v. Akins* (1976), 39 Ill. App. 3d 908, 351 N.E.2d 366.) The question of whether the State has met this burden is a jury question and a reviewing court will not substitute its judgment on the issue unless the evidence is so palpably contrary to the verdict or so unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *People v. Akins.*

The defendant contends that the only evidence which arguably contradicts the defendant's claim of self-defense is the position of the deceased's wound. However, the defendant asserts that this evidence is insufficient to overcome, by a reasonable doubt, his own testimony that he was justified in his use of force. The defendant emphasizes the fact that Dr. Stern even agreed that the wound was consistent with the situation where the deceased took an evasive action just before the assailant fired the gun.

■■ ■ The only evidence as to the events on Elizabeth Avenue was provided by the defendant, consisting of his statement to the police and his in-court testimony. The absence of other direct evidence challenging his testimony does not mean that the jury was required to accept the testimony of the defendant in toto. (*People v. Dillon* (1975), 28 Ill. App. 3d 11, 327 N.E.2d 225.) As arbiter of the credibility of the witnesses, the jury was free to "believe as much or as little as they please" of the defendant's story. (*People v. Warren* (1965), 33 Ill. 2d 168, 210 N.E.2d 507.) There were sufficient conflicts between Ortiz' in-court and out-of-court statements for the jury to question his credibility. Between his statement to the police and his testimony, there were discrepancies as to whether or not he had been struck by a bullet, whether he was running when he fired and the direction in which the gun was pointed when he fired. In addition, there was a discrepancy as to the number of shots he fired. Considering his statements along with the pathological evidence as to the nature of the wound, there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that Ortiz did not reasonably believe that his life was in danger or that severe bodily injury to himself was imminent when he shot the gun. That conclusion was not so palpably contrary to the verdict that it raises a reasonable doubt as to the defendant's guilt. Therefore, we refrain from overturning the jury's decision.

The defendant also contests the sufficiency of the evidence to support a conviction for involuntary manslaughter. Ortiz argues that the evidence

introduced at trial could never support a finding of recklessness. Therefore, he asserts that the court erred in submitting the instruction on involuntary manslaughter to the jury and that his conviction must be reversed.

Where a defendant has been charged with murder, an instruction on the offense of involuntary manslaughter should be tendered to the jury whenever there is sufficient evidence, if believed, which would reduce the crime to manslaughter. (*People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314; *People v. Taylor* (1976), 36 Ill. App. 3d 898, 344 N.E.2d 742.) The conviction of a defendant of the lesser included offense will not be disturbed by a reviewing court unless the evidence was so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People v. Yocum* (1970), 122 Ill. App. 2d 126, 257 N.E.2d 793.) The mental element required to establish the offense of involuntary manslaughter is that of recklessness. (Ill. Rev. Stat. 1975, ch. 38, par. 9—3(a).) The term "recklessness" is defined by section 4—6 of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 4—6) in the following manner:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. * * *"

In the present case, the defendant testified that he fired the gun while running and that at the time the gun was pointed in the air. We believe that a jury could conclude that such conduct amounted to "a gross deviation from the standard of care which a reasonable person would exercise in the situation." Therefore, we hold that the trial court did not err in tendering the involuntary manslaughter instruction to the jury and the jury's conclusion was not improper.

Ortiz next argues that the jury instructions on involuntary manslaughter erroneously omitted reference to the requirement that the State prove that the defendant was not justified in using force likely to cause death or great bodily harm. The record shows that the jury was given Illinois Pattern Jury Instructions, Criminal, Nos. 7.07, 7.08 and 5.01 (hereinafter IPI Criminal). Instruction No. 7.07 defined the crime of involuntary manslaughter while No. 7.08 enumerated the propositions which the State had to prove in order to establish that the defendant was guilty of the crime. Instruction 5.01 defined the term reckless. The jury was given IPI Criminal No. 24.06, which instructed the jury on the use of force in defense of a person. The defendant argues, in effect, that in place of No. 7.08, the court should have tendered IPI Criminal No. 25.05, which

includes among the propositions to be proved by the State, the absence of lawful justification. The State, on the other hand, argues that the absence of lawful justification is not an element of the crime of involuntary manslaughter and that by reading all of the instructions given to the jury, the jury was adequately informed of the State's burden of proof.

■■ We agree with the State that the lack of lawful justification is not a necessary element of the crime of involuntary manslaughter. (*People v. Pettis* (1974), 23 Ill. App. 3d 623, 320 N.E.2d 194.) However, once sufficient evidence is introduced to establish a claim of self-defense, the State, in order to prove the defendant guilty of involuntary manslaughter, must establish, beyond a reasonable doubt, that the use of deadly force was not justified. (*People v. Owens; People v. Akins.*) The jury must be instructed that the State carries this burden. See *People v. Graves* (1978), 61 Ill. App. 3d 732, 378 N.E.2d 293; *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18.

After reviewing all of the instructions tendered to the jury (*People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697), we do not believe that the jury was adequately informed of this aspect of the State's burden of proof. In neither the definitional instruction (IPI Criminal No. 7.07) nor in the instruction on the elements of the crime (IPI Criminal No. 7.08) was the jury informed that if the defendant's actions were legally justified, he could not be convicted of involuntary manslaughter. While the jury was given the instruction on the lawful use of force in defense of a person (IPI Criminal No. 24.06), they were never informed that they were to consider that instruction with respect to the crime of involuntary manslaughter. Moreover, we note that in instructing the jury on murder, the trial court tendered IPI Criminal No. 25.05, which included the absence of lawful justification as an element of the State's proof. Thus, the jury could reasonably have interpreted instruction No. 24.06 as relating solely to the offense of murder.

The court in *People v. Singleton* (1976), 41 Ill. App. 3d 665, 354 N.E.2d 464, considered nearly the precise issue which is presented here. In *Singleton*, the defendant appealed from his conviction for involuntary manslaughter claiming that it was error for the trial court to give IPI Criminal No. 7.08 where the defendant has raised the issue of self-defense. In reversing the defendant's conviction, the court reasoned that since the State was obligated to prove, beyond a reasonable doubt, that the killing for which the defendant was on trial was without lawful justification, the tendering of instruction No. 7.08 was prejudicial and misleading.

■■ As in *Singleton*, we believe that the giving of instruction No. 7.08 instead of instruction No. 25.05 on the crime of involuntary manslaughter

was misleading and prejudicial. We, therefore, believe that the defendant is entitled to a new trial.

Our disposition of the issue on the involuntary manslaughter instruction makes it unnecessary to address the issue of the propriety of the flight instruction. However, since the question of the restrictions placed upon the defendant's testimony as to his state of mind is likely to arise again on retrial, we will briefly address that issue. It is the defendant's contention that he should have been allowed to disclose the fact that, immediately prior to the fight, Figueroa warned him that Guevera was a "killer." The State, on the other hand, takes the position that since this evidence would be hearsay, it was properly excluded.

In order to justify the shooting of Guevera it was necessary for Ortiz to establish that he reasonably believed that the use of such force was necessary "to prevent imminent death or great bodily harm to himself." (Ill. Rev. Stat. 1977, ch. 38, par. 7—1.) Thus the defendant's state of mind at the time of the occurrence was a material issue and provided a proper subject for examination. (*People v. Harris* (1956), 8 Ill. 2d 431, 134 N.E.2d 315; *People v. Williams* (1977), 45 Ill. App. 3d 338, 359 N.E.2d 736.) Certainly the statement was probative of the defendant's state of mind at the time of the shooting. In such a situation, the rule against hearsay does not disqualify such testimony. Not every in-court reference to an out-of-court statement constitutes hearsay; the term hearsay refers only to out-of-court statements which are offered to prove the truth of the matters asserted therein. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738; *People v. Richardson* (1974), 21 Ill. App. 3d 859, 316 N.E.2d 37.) Here, the testimony was offered not to establish that Guevera in fact killed another individual but only that at the time of the shooting Ortiz knew of the allegation that Guevera was a "killer." The testimony was not hearsay and should have been admitted in order to show the state of mind of the defendant at the time of the shooting.

For the foregoing reasons, we reverse and remand the case to the Circuit Court of Cook County for a new trial.

Reversed and remanded.

McNAMARA and SIMON, JJ., concur.