THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES HENRY THURMAN, Defendant-Appellant.

First District (2nd Division)   No. 82—1128

Opinion filed December 27, 1983.

Marshall A. Levin, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Harry J. Devereux, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant Charles Henry Thurman was charged under a six-count indictment with murder, armed violence predicated on murder, voluntary manslaughter, armed violence predicated on voluntary manslaughter, involuntary manslaughter, and armed violence predicated on involuntary manslaughter, for the killing of Opheous Beck. Defendant was tried before a jury which initially returned only a finding of not guilty as to murder. The trial court informed the jury that there were five other charges upon which verdicts must be returned, and the jury was sent back for further deliberations. Upon returning, the jury found defendant not guilty of voluntary manslaughter and armed violence predicated on voluntary manslaughter, and it found defendant guilty of involuntary manslaughter and armed violence predicated on involuntary manslaughter. The jury did not return a verdict on the armed violence predicated on murder count. The court entered judgment of conviction on the verdict concerning armed violence predicated on involuntary manslaughter only and defendant was sentenced to 13 years' imprisonment. Defendant appeals.

The facts pertinent to this appeal are as follows:

The defendant is the owner of a bar called Big C's in Chicago. At about 3 a.m. on October 3, 1981, Opheous Beck, the victim, was in defendant's bar and was intoxicated. Defendant was working in the bar at that time.

Charles Small was also in defendant's bar at 3 a.m. Small testified that he thought Beck was intoxicated. Beck was fighting with customers in the bar, and Small saw defendant engage in a verbal exchange with Beck. At about 5 a.m., Small saw Beck on the floor and Small and Lavon Rufus Nelson carried Beck out of the bar. Small then saw defendant come out of the bar and tell Beck never to come back. Beck began waving his arms and threatening to kill defendant and blow up his bar. Small then saw defendant draw the pistol he was car-

rying and shoot Beck in the forehead at close range. Beck was unarmed and did not touch defendant prior to the shooting.

Small's testimony was essentially corroborated by Lavon Rufus Nelson. Nelson testified that he helped Small carry Beck out of the bar and that defendant followed them outside. Nelson heard defendant tell Beck not to return to the bar, and he heard Beck threaten to kill defendant and to blow up his bar. Nelson did not see defendant draw his gun but he did see defendant fire the gun into Beck's forehead.

Defendant denied that Nelson was at the bar at the time of the shooting. Defendant testified that it was he, not Nelson, who helped carry Beck out of the bar. Defendant admitted carrying a gun and firing it at Beck, but he contends that he fired at Beck because Beck was attacking him.

Following deliberations, the jury returned with a verdict of not guilty of murder. The judge informed them that there were five other charges for which verdicts must be returned, and the foreman responded that it was their understanding that they had only one "paper" to return. The court then asked the foreman if he thought that the jury could reach verdicts as to the remaining charges and the foreman responded that he did not think so. The court asked if it could be of assistance in helping the jury to come to a decision and the foreman responded that there were some questions that the jury would like to have answered. The court then asked that the jury step out in order that he be allowed to discuss the matter with counsel for both sides.

Out of the presence of the jury, counsel for defendant stated to the court that it was his opinion that when the jury had returned a verdict of not guilty of murder, they had actually intended to acquit the defendant of all charges against him. The trial court rejected this contention by pointing out that the foreman had said "not guilty of murder" and concluded that it would be unreasonable to extend the finding of not guilty to any other charge besides murder.

The court called the jury back and it asked the foreman if they understood that there were five other charges pending. The foreman responded that they now understood that but that he did not know if they would be able to reach verdicts on the remaining charges. The foreman stated that they had taken four other ballots on the remaining charges without reaching a unanimous decision. The court questioned several other jurors as to whether they felt it was possible to reach a decision on the remaining charges. One of the jurors stated that their difficulty in reaching a decision was because "sufficient evidence wasn't there." The court again asked if it could be of assistance in reaching a decision and one of the jurors said that they had some ques-

tions. The judge responded that the questions should be reduced to writing and sent to him and, if proper to do so, he would answer the questions. The court explained to the jury that in order to acquit defendant on all charges, the jury must sign the not guilty forms for each charge. The court then sent the jury back for further deliberations.

Upon returning, the jury found defendant not guilty of voluntary manslaughter and armed violence predicated on voluntary manslaughter and guilty of involuntary manslaughter and armed violence predicated on involuntary manslaughter. The jury returned no verdict on the charge of armed violence predicated on murder. After polling the jurors, the court sentenced defendant to 13 years' imprisonment. Defendant then instituted this appeal.

Defendant first contends that the jury's verdict of "not guilty of murder" should have operated as a general verdict of acquittal and that the trial court erred when it orally informed the jury that they must return verdicts on all charges before them.

After the jury read its partial verdict and was sent out by the court, defense counsel argued that by rendering only a single verdict of "not guilty of murder," the jury actually intended that the verdict apply to all six charges. The court rejected this argument noting that the jury had said "not guilty of *murder*." (Emphasis added.) Defense counsel apparently accepted the court's ruling by acknowledging that it was within the province of the court to so rule. Defense counsel did not object when the court informed the jury that they must return verdicts on all charges before them and did not raise the issue in his motion for a new trial. In his post-trial motion, defendant did argue that the jury's verdict of "not guilty of murder" served as a general verdict of acquittal.

■ A verdict is to be reasonably construed and should not be disturbed unless there is doubt as to its meaning. (*People v. Clark* (1979), 71 Ill. App. 3d 381, 417, 389 N.E.2d 911.) We first note that the jury's verdict of "not guilty of murder" is unambiguous. If the jury had intended to return a general verdict of acquittal, they would have omitted any reference to a specific charge. We find that the first verdict returned by the jury was not intended to operate as an acquittal of all charges against defendant. This finding is supported by the fact that the jury conducted four votes on the charges other than murder but was unable to reach a verdict on any of them. Thus, the jury did not find the defendant not guilty as to all charges but simply returned a verdict as to the only charge on which they were able to unanimously agree.

Defendant also objects to the manner in which the trial court dealt with the jury's failure to return verdicts on all the charges. Upon learning that the jury had reached a verdict on only one charge, the trial court informed them that they must reach a verdict as to each and every charge before them. The court then directed the jury to resume deliberations. Defendant argues that the court's statement that a verdict must be returned as to each charge was a misstatement of law and amounted to an improper oral instruction to the jury. The case law, however, directly refutes this argument.

When a jury fails to return verdicts on all the charges before them, it is clearly proper for the court to inform them that verdicts must be returned on all charges and send them back for further deliberations. (See *People v. Wilson* (1972), 51 Ill. 2d 302, 309, 281 N.E.2d 626; *People v. Rollins* (1982), 108 Ill. App. 3d 480, 486, 438 N.E.2d 1322; *People v. Chisum* (1975), 30 Ill. App. 3d 546, 548, 333 N.E.2d 546.) Such actions clearly do not amount to improper oral instructions to the jury because the court is permitted to give brief explanatory remarks concerning the form of the verdict (*People v. Bydalek* (1942), 381 Ill. 330, 335, 45 N.E.2d 849), but in so doing, the court must be circumspect and careful so as not to influence the jury in its deliberations. Only when the court's comments can be said to have impacted on the jury's deliberations are they improper.

■ In the instant case, the trial court's actions were clearly proper. By informing the jury of their duty to return verdicts on all charges and by sending the jury back for further deliberations, the court was acting in accordance with the law. (See, *e.g., People v. Wilson* (1972), 51 Ill. 2d 302, 309, 281 N.E.2d 626.) The court's comments to the jury were neutral and could in no way be construed as favoring one verdict over another. Under these circumstances, we find that the trial court acted properly.

■ Even after being instructed by the court to return verdicts on all the charges before them, the jury ultimately failed to return a verdict on the charge of armed violence predicated on murder. This failure to return a verdict on one count does not affect the verdicts returned or the judgment entered. The result is simply that defendant may not be retried on that count. See *People v. Bean* (1975), 26 Ill. App. 3d 1090, 1096, 325 N.E.2d 679, *affirmed* (1976), 64 Ill. 2d 123, 355 N.E.2d 17.

Defendant next contends that the testimony of a State's witness was "apparently not truthful" and "tainted" the testimony of the other eyewitness. From this, defendant apparently concludes that he was not proven guilty beyond a reasonable doubt. But it is clearly for

the trier of fact to determine the credibility of the witnesses and to accept or reject as much of a witness' testimony as it pleases. (*People v. Beasley* (1977), 54 Ill. App. 3d 109, 114, 369 N.E.2d 260.) A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the credibility of the witnesses. (*People v. Dunklin* (1982), 104 Ill. App. 3d 685, 690, 432 N.E.2d 1323.) This contention, which involves only the credibility of a State's witness, was implicitly resolved by the jury when they convicted defendant, and we refuse to disturb the jury's decision.

■ Defendant next contends that Illinois' armed violence statute is violative of the double jeopardy clauses contained in the Federal and State constitutions. Defendant failed to raise this issue in the trial court, and it may therefore be treated as waived. (*People v. Denby* (1981), 102 Ill. App. 3d 1141, 1146, 430 N.E.2d 507.) Defendant argues, however, that the waiver rule should be relaxed in this case because of a recent Supreme Court decision, *Missouri v. Hunter* (1983), 459 U.S. 359, 74 L. Ed. 535, 103 S. Ct. 673, which was decided after this appeal was instituted. After examining *Hunter* and the other case law on this issue, however, we find no basis for relaxing the waiver rule.

■ Defendant's next contention concerns the trial court's failure to include lack of justification as an element in the issues instruction on involuntary manslaughter. The State contends that defendant has waived this issue because of his failure to object to the instruction tendered to the jury and to raise the issue in his post-trial motion. Generally, these factors will result in a waiver of an issue on review. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180-81, 415 N.E.2d 1027.) If, however, a reviewing court finds that the issue raised constitutes grave error or that the evidence is factually close, it may address the issue despite the failure to properly preserve it for review. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 544, 440 N.E.2d 1248.) For the reasons which follow, we find that this issue constitutes plain error which requires our consideration.

Defendant contends that the issues instruction for involuntary manslaughter improperly omitted lack of legal justification as an element which the State had the burden of proving beyond a reasonable doubt. Lack of legal justification was included as a distinct element in the issues instructions for both murder and voluntary manslaughter. Defendant argues that the omission of this element from the issues instruction on the involuntary manslaughter count could very well have led the jury to believe that justification was not an issue as to that charge.

It is true that legal justification is not an element of the offense of

involuntary manslaughter. (*People v. Ortiz* (1978), 65 Ill. App. 3d 525, 532, 382 N.E.2d 303.) However, once defendant has put on sufficient evidence to raise the issue of self-defense, the State has the burden of proving that defendant was not justified in using the force that he did. See 65 Ill. App. 3d 525, 532.

The Illinois Pattern Jury Instructions (IPI), Criminal (2d ed. 1981), provide that when an affirmative defense such as self-defense is raised, the elements or issues of that defense should be treated in two ways: "*first*, by definition following the definition of the crime with which the defendant is charged; *second*, in the same instruction with the issues or elements of the crime and the State's burden of proof." IPI Criminal, ch. 24—25.00, Introduction, at 548 (2d ed. 1981).

In the instant case, legal justification was included in the definitional instruction for involuntary manslaughter but not in the issues instruction. Thus, the jury did not receive a single instruction covering all of the issues involved in the involuntary manslaughter count. See IPI Criminal, ch. 24—25.00, Introduction, at 548 (2d ed. 1981).

The basic issue raised by defendant here has been addressed by Illinois courts on several occasions. A majority of the courts which have addressed this issue have held that the failure to include lack of justification as an element of the issues instruction for involuntary manslaughter entitles defendant to a new trial. (See, *e.g., People v. Wells* (1982), 110 Ill. App. 3d 700, 708-09, 442 N.E.2d 1341; *People v. Ortiz* (1978), 65 Ill. App. 3d 525, 531-33, 382 N.E.2d 303; *People v. Singleton* (1976), 41 Ill. App. 3d 665, 669, 354 N.E.2d 464; but see *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 1010-11, 423 N.E.2d 1185.) In all these cases, lack of legal justification was omitted from both the issues and the definitional instructions for involuntary manslaughter. Here, however, lack of legal justification was included in the definitional instruction. The State argues that by including lack of justification in the definitional instruction, the jury was adequately informed as to all elements involved in the involuntary manslaughter count. We disagree.

The IPI Criminal notes the importance of presenting a jury with an instruction containing all of the issues involved in an offense. (See IPI Criminal, ch. 24—25.00, Introduction, at 548 (2d ed. 1981).) Only the issues instruction graphically sets out each element of an offense in checklist form. In a case such as this involving multiple counts, the inclusion of lack of justification as an element of the issues instruction on one offense, while omitting it from another, would lead a diligent jury to conclude that justification is not an element of the latter offense. The inclusion of lack of legal justification in the definitional instruction alone does not suffice because that instruction fails to inform

the jury that the State bears the burden of proving that defendant was not justified in using the force that he did. See IPI Criminal No. 7.08 (2d ed. 1981); see also *People v. Berry* (1982), 111 Ill. App. 3d 487, 492, 444 N.E.2d 593.

In the instant case, the testimony at trial revealed that Opheous Beck, the victim, was intoxicated and had been fighting with customers in the bar prior to the shooting. There was also evidence that Beck and defendant had a heated verbal exchange before Beck was removed from the bar. The eyewitnesses testified that upon being removed from the bar, Beck began waving his arms and threatening to kill defendant and to blow up the bar. Defendant testified that in addition to the threats, Beck attacked him.

■ Based on the foregoing evidence, it is apparent that this case is factually close on the issue of whether the shooting occurred as a result of self-defense. (See *People v. Berry* (1982), 111 Ill. App. 3d 487, 493, 444 N.E.2d 593.) It is for this reason that we have elected to review this issue under the plain-error doctrine. We conclude that when legal justification is raised as a defense, it must be included as an element of both the definitional and issues instructions in order for the jury to be properly instructed. Accordingly, we reverse the conviction for armed violence predicated on involuntary manslaughter and remand this matter for a new trial. Because of our decision on this issue, we need not address defendant's final contention.

■ We also have before us the State's request that defendant be assessed the costs of prosecuting this appeal. Such an assessment is authorized following an appeal only when a conviction is affirmed. (See Ill. Rev. Stat. 1981, ch. 53, par. 8.) Because we have reversed defendant's conviction in the instant case, it follows that we must deny the State's request for costs.

For the reasons expressed herein, we find that the trial court did not err in its disposition of the incomplete verdict. The constitutional issue raised by defendant has been waived. Defendant's conviction for armed violence predicated on involuntary manslaughter is reversed and this matter is remanded for a new trial on only the involuntary manslaughter and armed violence predicated on involuntary manslaughter counts.

Reversed and remanded for a new trial.

DOWNING, P.J., and PERLIN, J., concur.