THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES WILLIAMS, Defendant-Appellant.

First District (2nd Division)    No. 62331

Opinion filed January 18, 1977.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Defendant, Charles Williams, shot and killed Jackie Shaffer. He was indicted for the offense of murder. (Ill. Rev. Stat. 1973, ch. 38, par. 9—1.) Following a bench trial he was found guilty of voluntary manslaughter (Ill. Rev. Stat. 1973, ch. 38, par. 9—2) and sentenced to the Department of Corrections for two to six years.

On appeal defendant argues that the evidence at trial failed to prove beyond a reasonable doubt that defendant was guilty of voluntary manslaughter under section 9—2(a) which provides that a killing is voluntary manslaughter if the defendant was under a sudden and intense passion resulting from serious provocation and further that the evidence failed to prove beyond a reasonable doubt that under section 9—2(b) defendant was unreasonable in his belief that the killing was necessary for his self-defense. Defendant also charges that the court's rendition of the facts was not supported by the evidence adduced at trial or reasonable

inferences drawn from the evidence; that the trier of fact erred in refusing to allow defendant to testify as to his fear of the deceased and deceased's companions; and that the trial court erred in not allowing defendant to testify as to his reason for carrying a gun on the date of the occurrence.

The occurrence took place on April 8, 1974, at the southwest corner of Fulton and Kedzie in the City of Chicago at about 10 p.m. Defendant shot Jackie Shaffer who died of a bullet wound to the chest-lung area. There also was a wound in his arm. The State presented three occurrence witnesses.

Thomas Davis testified that for a considerable period before the shooting he was standing on the sidewalk near his house at 3151 Fulton talking to Horace Morff and another person. His house is on the south side of Fulton and a couple of doors east of the southeast corner of Kedzie and Fulton. He did not see Shaffer prior to the shooting. His attention was drawn to the scene when he heard a shot. He looked around and saw that Jackie Shaffer had fallen to the ground at Kedzie and Fulton near the store on the corner. The defendant was standing on the side of the mailbox several feet from where the victim was. The witness heard another shot and then went into his house to call the police.

Horace Morff testified that he had been talking to Davis near his father's house which he described as being three or four houses east of the southeast corner of Fulton and Kedzie. He had been talking with Davis and someone named Lydell for about a half hour before the occurrence. At the time of the trial he did not know Lydell's whereabouts. The witness testified that he observed Shaffer for a couple of minutes when Shaffer started to cross the street and defendant walked up to him and shot him. After the witness heard the shots he saw Shaffer grab himself and heard him say, "Hey, man," then he fell. When Shaffer fell defendant kept shooting at him. There were five or six more shots. Defendant walked away and Shaffer got up and ran across the street where he fell. Shaffer had nothing in his hand. Defendant then went into a tavern.

Theodore Harris was walking in a northerly direction on Kedzie on the west side of the street about four doors south of the southwest corner of Kedzie and Fulton when he heard about three shots. He looked to see from where the shots came and saw two men at the corner. Defendant was holding a gun standing over Shaffer. The witness heard defendant say he was going to kill Shaffer and Shaffer said, "What do you mean? I didn't have anything to do with it." After that he heard two more shots. Shaffer got up to go across the street and fell. Defendant, after the shooting, walked into a church where he stayed a few minutes and then went into a liquor store.

Defendant testified in his own behalf. On the evening of the occurrence he left his place of employment at Kedzie and Carroll Avenues in Chicago

at about 10 p.m. Although his normal shift lasted until 12:30 a.m., he left early because his supervisor assigned him a job he did not like. He was carrying a pistol in his waistband when he left work that evening. He walked south on the west side of Kedzie toward the Lake Street elevated railway train station which is about a block and a half south of his place of employment. As he was walking he saw four or five young men at Kedzie and Fulton who stopped him and had a conversation with him. They asked defendant if he wanted to buy some reefers. Defendant said he had no money. They asked him if he had enough to buy some wine. Defendant said he did not have enough money and they threw a quarter at him and told him "to get in there and get it." The liquor store was a few doors south of the scene and the witness testified that after making the purchase he walked back north to where the boys were. Shaffer opened the wine and passed it around. Defendant was told to drink some of it and had one swallow of the wine. One of the boys put an arm around his neck and put a gun in his back. Shaffer took defendant's wallet at that time. Defendant was shoved by the boy with the gun and told to go ahead. Defendant walked about 15 or 20 feet toward the elevated train station when Shaffer called him back and threw his wallet toward him. Defendant picked up the wallet and put it in his back pocket. Shaffer was walking toward defendant at this time and said, "Come back here, nigger, we're not through with you." At that time, defendant "discovered" he still had his pistol and testified that he was so nervous he thought maybe they had taken it. Defendant then started shooting. Shaffer was about five feet from him. He struck Shaffer, at whom he was shooting, in the chest. Shaffer fell back and defendant came close to him and shot him again in the arm. He fired the other three shots in the ground to scare the other boys. Shaffer said, "I'm not the one. I didn't do it. I'm not the one." Defendant never saw the decedent with a gun. Only a second elapsed between the first shot and the next three shots.

In order to obtain a conviction for voluntary manslaughter the State had to prove either of the following under section 9—2:

"(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he was acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed * * *
* * *

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would

justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is *unreasonable*." (Emphasis added.)

Article 7 is titled "Justifiable Use of Force; Exoneration" and section 7—1 provides as follows:

> "A person is justified in the use of force against another when and to the extent that he *reasonably believes* that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he *reasonably believes* that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." (Emphasis added.)

■■ Defendant argues the conviction should be reversed because the evidence is insufficient to prove him guilty of voluntary manslaughter under either section 9—2(a) or (b). Defendant was stopped by a group of young men who harassed him, told him to purchase wine for them and after he had done so he was forced to drink some wine and then was grabbed around the neck and had a gun put in his back. His wallet was thrown back at him and when he attempted to pick it up Jackie Shaffer was walking toward him and told him they were not through with him yet. Under these circumstances it was for the court to resolve the issues as to whether or not defendant was acting under a serious provocation sufficient to excite a sudden and intense passion in a reasonable man or whether he was reasonable or unreasonable in his beliefs that his action was necessary for his self-defense. The conclusion of the trial court on either aspect of the voluntary manslaughter charge is supported by the evidence that was admitted.

Defendant argues, however, that certain relevant evidence was excluded by rulings of the trial court and for this reason he was denied a fair trial therefore the matter should be reversed and remanded for a new trial. During the course of the direct examination of defendant, defendant was asked if he was forced to go to the store and buy the wine. An objection was made and sustained. Later, on cross-examination, defendant was examined concerning his walking north to where the boys were after purchasing the wine rather than walking south toward the elevated train. On redirect examination he was asked why he did not walk south. An objection was made and sustained. Defense attorney at that time said the evidence was very important because there was a specific reason and he wanted to make an offer of proof. The court commented "there is no way that defendant could show what is in his mind." The court said defendant could make an offer of proof later if he wished. In his motion for a new trial, defendant asserts that defendant would have

testified that he returned to the boys because he was afraid they would have pursued him and hurt him in the same manner as another group had done two days before. Further, he would also show he had been robbed or assaulted over a dozen times and seriously wounded by knife or gunshot at least three or four times. The court in summarizing the evidence specifically commented on the fact that defendant did not go south to the elevated train, but rather walked north and that that was one of the factors that indicated the shooting was not in self-defense.

■■  We believe the court was in error in restricting the examination of defendant. In a case such as this, defendant's state of mind is material and a proper subject of examination. (*People v. Harris* (1956), 8 Ill. 2d 431, 134 N.E.2d 315.) These questions were relevant in determining the reasonableness of defendant's beliefs in his affirmative defense of self-defense. (*People v. Johnson* (1969), 108 Ill. App. 2d 150, 159, 247 N.E.2d 10.) We cannot say that the exclusion of this crucial testimony concerning the state of mind of defendant is harmless beyond a reasonable doubt. (*People v. Mitchell* (1975), 27 Ill. App. 3d 117, 327 N.E.2d 158.) Consequently, the conviction on this ground must be reversed and remanded.

Conviction of the defendant is reversed and remanded because of the exclusion of relevant evidence and the cause is remanded for a new trial.

Reversed and remanded.

DOWNING, P. J., and STAMOS, J., concur.