THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PHIL KLINE, Defendant-Appellant.

First District (3rd Division)    No. 79-448

Opinion filed November 26, 1980.

Shelvin Singer, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Phillip Kline, was charged with two counts of murder and one count of attempt murder. A jury found him guilty of all three charges, and the court sentenced him to concurrent terms of 50 to 100 years for each murder charge and 10 to 30 years for attempt murder. Defendant contends on appeal that he was not proved guilty beyond a reasonable doubt; that, despite the fact he relied on self-defense, he was not permitted to testify as to his state of mind; that essential defense evidence was erroneously excluded as hearsay; that the prosecutor's improper closing argument deprived him of a fair trial; that the trial court abused its discretion in denying him a short continuance to produce a key witness; that the use of defendant's involuntary statement mandates a new trial; that the trial court improperly denied his request to waive a jury trial; and finally that the jury verdict was the result of coercion.

On December 21, 1976, defendant killed Eugene "Bo" Washington and Rodney Morrison, and shot Ulysses Washington. Defendant admitted these acts and relied solely on a claim of self-defense.

Officer Thomas McCue of the Chicago Police Department testified for the defense that he arrested defendant in October 1976 for possession of cocaine and marijuana. McCue offered defendant an option of becoming an informant or of taking his chances in court. Defendant was to aid the police by providing information leading to three drug arrests. After giving some information, defendant was told by McCue that he had to come up with more arrests. Defendant told McCue about Bo Washington, who was not under surveillance by the police. McCue testified to instructions that he gave defendant to aid in the arrest of Bo. As opposed to making a controlled buy transaction from Bo, McCue wished defendant to get inside the suspected dealer's home and to positively identify anyone who resided in the home who controlled narcotics. With this information provided by defendant, McCue then planned to obtain a search warrant to enter the home to effect the arrest himself. McCue stated that he cautioned defendant to be careful because it was dangerous

work. The trial court permitted McCue to testify as to what he had said to defendant regarding the agreement, but repeatedly sustained the State's objections on the basis of hearsay when the defense attempted to have McCue testify as to defendant's statements.

David Quinlan, a friend of defendant's, testified for defendant that it was he who led defendant to Bo for the narcotics transaction. Quinlan arranged for defendant to purchase heroin from Bo and warned defendant to be careful because he had seen Bo and his friends with guns. Quinlan had seen Bo and Morrison with revolvers and had seen a shotgun in the basement of Bo's home.

Defendant's wife testified that she heard Officer McCue bargain with defendant to aid in making a large narcotics arrest. She offered to help, but was warned not to get involved because it was too dangerous. When defendant's wife attempted to testify as to the substance of statements which she heard but did not herself make regarding the agreement between defendant and McCue, the trial court sustained the State's objections.

Defendant testified that he agreed to act as an informant to keep from going to jail. Defendant stated that McCue had been pressuring him to supply more information for another narcotics arrest. Defendant requested help from Quinlan who led him to Bo as a possible narcotics source. During December 1976, Quinlan arranged for defendant to meet with Bo to effect a narcotics purchase. Defendant was allowed to testify as to his statements, but the trial court sustained objections on hearsay grounds as to any statements not made by defendant. During December defendant met twice with Bo and the others, purchased a small quantity of heroin and arranged for a future purchase of heroin. When defendant made the small purchase of heroin, he stated that he asked McCue if this would suffice for his end of the bargain. The trial court sustained the State's hearsay objection to the question as to McCue's response. Defendant testified that on the day of the shooting, he entered Bo's residence pursuant to an arrangement to purchase a larger quantity of heroin. Defendant armed himself with an automatic pistol before going. Upon his arrival defendant was taken to a T.V. room, where he was introduced to Morrison and Ulysses Washington. Defendant noticed a shotgun leaning upright against the wall. The men went to the dining room where defendant asked to see the heroin. Ulysses leaned over and threatened defendant's life if anything went wrong. After defendant assured the men he would make no trouble, Morrison and Ulysses returned to the T.V. room. Defendant tested the heroin and told Bo that he did not have all the money at that time. He suggested that Bo hold onto the heroin until he returned in two hours. Defendant stated that Bo became angry and came at him "crazy like."

Defendant testified that Bo was yelling loudly and he was afraid. Defendant stood up trying to assure Bo that he could be trusted. Defendant drew his gun and told Bo to freeze, but Bo advanced, and crouched low, repeating, "get him, kill him." Defendant fired a shot and ran to the T.V. room thinking of the shotgun. He told the two men to freeze but Morrison grabbed the shotgun and swung it towards defendant. When Morrison pointed the gun at him, defendant shot. Ulysses arose from the couch and advanced toward defendant ignoring his warning, and defendant fired again. Defendant fled to a motel with a bag of heroin. After several unsuccessful attempts to contact Officer McCue by telephone, defendant injected heroin and blacked out. He was arrested and made a statement. Defendant does not remember anything about the statement because he was hallucinating. When asked by defense counsel why he brought the gun, why he pulled the trigger, and about his knowledge of the number of persons he was about to encounter at Bo's home, the trial court sustained the State's objections.

Ulysses Washington testified for the State that on the evening of the shooting he had been residing at his brother Bo's home. He saw defendant enter with Bo while Morrison and he were in the T.V. room. From that room he heard footsteps, a shot, and then saw Bo stumble and fall into the T.V. room. Defendant was right behind Bo. Ulysses testified that defendant then shot Morrison, and next fired at him. When the shooting began, Ulysses was holding his child on his lap but had put him down. Ulysses did not have a weapon, nor did he see a weapon in Morrison's possession. There was no shotgun in the home. Ulysses also testified that no one threatened or provoked defendant. To his knowledge, no drugs were in the home. No weapons were found; nor were any narcotics recovered from the home.

We reject defendant's initial contention that the evidence adduced by the State was so incredible that he was not proved guilty beyond a reasonable doubt. The evidence presented was ample to support the conviction.

We next consider defendant's contention that the trial court improperly excluded essential defense evidence on the erroneous grounds that it was inadmissible hearsay.

The trial court excluded as inadmissible hearsay those conversations comprising defendant's agreement to work as an informant for the police in apprehending Bo, and the agreement between defendant and Bo as to the proposed narcotics transaction. The court limited each witness to testify as to his or her part of the various conversations.

■■ It is fundamental that not all out-of-court statements are hearsay; only those offered to prove the truth of the matter asserted constitute inadmissible hearsay. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190

N.E.2d 738; *People v.. Campbell* (1975), 28 Ill. App. 3d 480, 328 N.E.2d 608.) If the out-of-court statements are offered to prove the resultant effect of those words on the listener's state of mind, then the speaking of the words is independently relevant regardless of the truth of their content and the statements are admissible as non-hearsay. (*People v. Carpenter*; *People v. Ortiz* (1978), 65 Ill. App. 3d 525, 382 N.E.2d 303.) In Cleary and Graham, Handbook of Illinois Evidence §801.5, at 401 (3d ed. 1979), it is stated:

> "Hearsay does not encompass all extrajudicial statements but only those offered for the purpose of proving the truth of matters asserted in the statement. [Citation.] Therefore, when the mere making of the statement is the significant fact, hearsay is not involved.
>
> * * *
>
> In another group falling outside the category of hearsay, a statement made by one person which becomes known to another is offered for the purpose of showing the latter's state of mind as a circumstance under which the latter acted and as bearing upon his conduct."

It is clear from defendant's claim of self-defense and the questions asked, that all statements made to him about the proposed transactions with Bo were offered to show the effect of those words on defendant's state of mind, and not for the truth of the matter asserted in the statements. It was relevant that defendant reasonably thought decedents were armed and dangerous, not whether they in fact were armed and dangerous. It was relevant that defendant thought he was supposed to delay the transfer of the drugs and leave the premises empty handed long enough for the police to return with a search warrant, and not whether the police in fact, intended to get a warrant. The trial court therefore erroneously ruled that these statements were hearsay and excluded highly relevant evidence pertaining to defendant's claim of self-defense. *People v. Ortiz.*

Similarly, the statements made by defendant evincing the terms of the agreement with McCue were offered to show that defendant had knowledge of the imminent danger involved in acting as a police informant when dealing with Bo. As such, these statements were admissible as non-hearsay. (*Illinois Building Authority v. Dembinsky* (1968), 101 Ill. App. 2d 59, 242 N.E.2d 67.) In Cleary and Graham, at page 401, it is also stated:

> "In one group of extrajudicial statements thus falling outside the category of hearsay, the statement itself—the verbal act—has legal significance. * * * Other illustrations are statements * * * *offered to show that the person who either made* or heard a *statement had notice of its content.* [Citation.]" (Emphasis added.)

Most importantly, we are mindful that a claim of self-defense requires an inquiry into who was the first aggressor, as well as a determination whether a reasonable belief existed that a certain degree of force, even deadly, was necessary to defend. (Ill. Rev. Stat. 1975, ch. 38, pars. 7—4(c), 7—1; *People v. Lenzi* (1976), 41 Ill. App. 3d 825, 355 N.E.2d 153.) A crucial aspect of defendant's defense in this regard is his claim that Bo instigated an attack as a result of defendant's request to delay the heroin purchase for two hours while defendant obtained more money. Thus, any statement made by defendant to McCue demonstrating an understanding that such a delay was part of their plan is highly probative; a statement of this intent by defendant is clearly admissible for the inference that he acted in conformity with that stated intent. *Nordgren v. People* (1904), 211 Ill. 425, 71 N.E. 1042; *People v. Reddock* (1973), 13 Ill. App. 3d 296, 300 N.E.2d 31.

■■ In addition to arguing that the excluded evidence was inadmissible hearsay, the State urges that defense counsel waived the error by failing to argue with the trial court after it had ruled on the grounds of hearsay. Acceptance of this argument would be tantamount to a recognition of the doctrine of "formal exception" which Illinois has long ago rejected. (See, *e.g.*, 1 Wigmore, Evidence §20, at 355 (3d ed. 1940 & Supp. 1980); Ill. Rev. Stat. 1917, ch. 110, par. 81.) The doctrine of formal exception has been replaced with the general requirement of the offer of proof. But where the question shows the materiality and purpose of the evidence and clearly admits of an answer relative to the issue, an offer of proof is not required to preserve the error for review unless the trial court requested an offer. (*People v. Moretti* (1955), 6 Ill. 2d 494, 129 N.E.2d 709; *Creighton v. Elgin* (1944), 387 Ill. 592, 56 N.E.2d 825.) The questions at issue here meet the requirements of this exception. No offer of proof was necessary.

■■ Nor can we agree with the State that any error committed in excluding the evidence was cured by virtue of some evidence of the agreements eventually reaching the jury. We reiterate that defendant's sole claim was self-defense and that the statements of these agreements were highly relevant to the elements of that claim. It is unreasonable to suggest that crucial evidence of defendant's state of mind was as credible to a jury when it came from defendant as it would have been coming from the police officer. Defendant clearly was prejudiced by the cumulative restrictions placed by the trial court on his presentation of his defense. Moreover, the portions of the evidence which finally filtered through the many State objections cannot cure the damage done by the repeated exclusions.

Defendant also contends that he was improperly restricted in presenting his defense by the exclusion of certain evidence bearing on the reasonableness of defendant's belief that he had to shoot in self-defense.

The trial court sustained the State's objections to questions asked of defendant by defense counsel as to the number of persons defendant expected to encounter at Bo's home, as to why defendant had brought the gun with him and why he had fired the shot.

■■ Defendant's reasonable belief that such force was necessary to prevent imminent death or great bodily harm to himself is an essential element of his claim of self-defense. (Ill. Rev. Stat. 1975, ch. 38, par. 7—1.) Thus, defendant's state of mind at the time of the occurrence is a material issue and is a proper subject of examination. (*People v. Harris* (1956), 8 Ill. 2d 431, 134 N.E.2d 315; *People v. Pernell* (1979), 72 Ill. App. 3d 664, 391 N.E.2d 85.) Failure to permit defendant to directly testify as to his state of mind and the circumstances surrounding his acts is reversible error in self-defense cases. (*People v. Pernell.*) The State contends, however, that the evidence was properly excluded by the trial court on the basis of irrelevance in one instance, and on the basis of improper form in the other instance.

■■ The State maintains that defendant's belief as to the number of persons he expected to encounter at Bo's home was irrelevant and immaterial. We disagree. Defendant stood in an adverse position to the occupants of the home where he was about to engage in a drug transaction as a police informant. His belief as to the number of potential adversaries was highly probative of the reasonableness of his actions which culminated in the shootings. *People v. Lenzi* (1976), 41 Ill. App. 3d 825, 355 N.E.2d 153.

■■ Even if the trial court had sustained the objections as to the form of the other questions, it would be error. The questions as to "why" defendant brought a gun and fired shots were clearly proper under the circumstances of this case. An objection to the use of the word "why" could be based specifically on the ground either that the question calls for an impermissible opinion from the witness, or that the question, being open-ended, calls for a narrative response. Where, as here, however, the witness is the defendant and his claim is self-defense, his opinion as to his state of mind surrounding the occurrence is an essential part of his claim. (*People v. Allen* (1941), 378 Ill. 164, 37 N.E.2d 854.) Additionally, the theoretical basis for the objectionability of the narrative response is nonexistent in situations like the present one. In the usual case, permitting the witness to testify in a narrative may carry the risk of introducing irrelevant or hearsay testimony before the opposing party has the opportunity to respond. The present questions were clearly directed at eliciting highly relevant information regarding the defendant's state of mind at or near the time of the shootings. The questions were directed at defendant's and not some third person's motives and intent; therefore,

there was virtually no risk of eliciting inadmissible hearsay statements. The testimony was essential to defendant's claim of self-defense. Although the trial court has much discretion in ruling on objections to form, we would be compelled to hold, under these facts, that the court erroneously sustained these general objections and excluded the proffered testimony.

In view of our holding, we deem it unnecessary to consider defendant's other claimed errors. He will have an opportunity to receive an evidentiary hearing on the voluntariness of his statement. It is unlikely that the other matters claimed as error will recur in a new trial.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

McGILLICUDDY, P. J., and RIZZI, J., concur.