THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY
L. SIMS, Defendant-Appellant.

First District (2nd Division)   No. 1—89—3130

Opinion filed June 28, 1994.

Rita A. Fry, Public Defender, of Chicago (Evelyn G. Baniewicz, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Laura L. Morrison, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

Defendant, Larry L. Sims, was convicted of first degree murder of the victim, Dartagnan Young, and sentenced to 40 years' imprisonment. Defendant appeals, contending (1) that he was denied the opportunity to prove that he acted in self-defense due to the trial court's exclusion of evidence; (2) that the prosecutor's statements during closing argument denied him due process and his right to a fair trial; (3) that the trial court erred in failing to allow his proposed jury instruction on self-defense; (4) that the trial court erred in denying his motion to suppress oral statements; (5) that the trial court's sentence was based on an erroneous interpretation of the statute; and (6) that the trial court abused its discretion in sentencing him to 40 years' imprisonment because of the trial court's misapprehension of the state of the law at the time of sentencing. For the reasons stated below, we affirm defendant's conviction and remand for a new sentencing hearing.

On October 14, 1987, the victim, Dartagnan Young, a 15-year-old freshman at DuSable High School, died of multiple gunshot wounds after he was involved in an argument with defendant on the third floor of the school building. Jamillah Clark, Latonda Hughes and Bernard Collins, students at DuSable and witnesses to the shooting, testified that defendant told the victim that he would "whip [the victim's] butt" to which the victim responded that defendant wouldn't do anything to him. Collins testified that defendant also said that he "didn't have to take no shit" from the victim because "I'm a Black Gangster Disciple." According to Collins, the victim replied, "F*** Black Gangster Disciples, Cobra Stones and all those gangs." Defendant then pulled a handgun from his waistband area and pointed it at the victim's head. The victim was unarmed and had his back to defendant. The gun clicked twice before firing three times. Two of the bullets hit the victim. One bullet went through the victim's left arm;

the other entered the left side of the victim's back and lodged on the right front chest cavity area. After he was shot, the victim ran down the stairwell to the first floor of the building, where he collapsed and died.

First, defendant argues that the trial court improperly excluded his testimony of a conversation he had with his sister the day before the shooting on the basis of hearsay. In that conversation, defendant's sister, Keysha, told defendant that she had seen the victim draw a gun during an incident involving other students. Defendant argues that this testimony was relevant to his state of mind on the day of the shooting and supports his theory of self-defense.

In Illinois, a person is justified in using force likely to cause death or great bodily harm "only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." (Ill. Rev. Stat. 1991, ch. 38, par. 7—1.) A defendant's reasonable belief that such force was necessary is an essential element of his self-defense claim (*People v. Kline* (1980), 90 Ill. App. 3d 1008, 1014, 414 N.E.2d 141), and thus, a defendant's state of mind at the time of the occurrence is relevant and material (*People v. Currie* (1980), 84 Ill. App. 3d 1056, 1059, 405 N.E.2d 1142).

In this case, defendant's conversation with his sister the day before the shooting is hearsay if it was offered to prove the truth of the matter asserted. (*People v. Lawler* (1991), 142 Ill. 2d 548, 557, 568 N.E.2d 895.) Hearsay is generally inadmissible unless it falls within a designated exception. (*Lawler*, 142 Ill. 2d 548, 568 N.E.2d 895.) Where a defendant claims that he acted in self-defense, he may be allowed to testify to out-of-court statements that are probative of his state of mind at the time of the occurrence; such testimony is generally excepted from the rule against hearsay. *People v. Ortiz* (1978), 65 Ill. App. 3d 525, 533, 382 N.E.2d 303.

At trial, the State objected to defendant's testimony about the conversation with his sister. In sustaining the objection, the court found that the conversation amounted to "rank hearsay." Defense counsel proposed a "less favored alternative" in which the trial court allowed him to ask three questions: (1) Did you have that conversation with Keysha on the afternoon of the 13th? (2) Was it about Dartagnan (the victim)? and (3) Were guns involved? The trial court allowed defense counsel to pose those three questions to defendant. No further testimony with respect to defendant's conversation with his sister as it related to the victim was allowed.

Defendant argues that because his testimony was restricted, he was not allowed to establish that the victim carried and pulled out a gun the day before the shooting involved in this case. Hence, defen-

dant contends, he was not allowed to establish his state of mind that he believed the victim carried a gun.

It was error for the trial court to restrict defendant's testimony about his conversation with his sister as it related to the victim and a gun. The alleged fact that the victim carried a gun and pulled it out during a confrontation is probative of defendant's state of mind. An out-of-court statement offered to prove the effect of the words on the listener's state of mind is relevant and admissible as nonhearsay. *People v. Kline* (1980), 90 Ill. App. 3d 1008, 1012, 414 N.E.2d 141.

We find, however, that the error was harmless. An error will be deemed harmless if no prejudice to the defendant resulted from the error. (*People v. Jamison* (1991), 207 Ill. App. 3d 565, 568, 566 N.E.2d 58.) In determining whether an accused has been prejudiced by the rejection or exclusion of evidence, so as to require a reversal of the judgment, a reviewing court "look[s] to the entire record to see if the rejected evidence could have reasonably affected the verdict, and will refuse to disturb the judgment where guilt is shown beyond a reasonable doubt or where, upon the evidence, a different result could not have been reached." *People v. Hoddenbach* (1983), 116 Ill. App. 3d 57, 60, 452 N.E.2d 32, citing *People v. Wolff* (1960), 19 Ill. 2d 318, 167 N.E.2d 197.

After reviewing the record in this case, we find that the excluded evidence of which defendant complains could not have reasonably affected the jury's verdict and that defendant's guilt was proven beyond a reasonable doubt.

At trial, defendant provided the jury with a detailed account as to his state of mind and the circumstances which led to the shooting. On direct examination, defendant testified that when he arrived at school on the morning of October 14, 1987, he met a group of his friends. Defendant and his friends proceeded to the second floor of the school, where they found the victim and another of defendant's friends, Dion Allison, engaged in an argument. Defendant and his friends asked Dion to accompany them to division class on the third floor.

Before leaving the second floor, Dion stopped at his locker and retrieved a gun. Defendant took the gun from Dion "because Dion was arguing with [the victim] and *** he [Dion] was upset." Defendant then proceeded to his locker on the third floor, but was unable to place the gun in his locker because the division bell had rung. The victim ran up behind defendant and his friends calling them "marks" and asking them what they wanted to do. Defendant testified that he did not respond to this challenge and turned to walk away. Defendant and his friends continued to walk down the hall while the victim

followed, calling defendant a "punk" and a "mark." The victim then told defendant that he had better watch his back. At that, a teacher, Earl Shavers, told them both to go to class and pushed defendant forward. Defendant stated that as he walked to his class he turned around and saw the victim reach into his clothes. His state of mind at that moment was that he feared for his life. Defendant thought the victim was reaching for a gun, so defendant pulled out his gun and started firing.

Defendant's testimony was juxtaposed with that of four eyewitnesses who related virtually identical accounts of the incident. Those accounts overwhelmingly contradicted defendant's claim of self-defense.

Earl Shavers further testified that he personally separated defendant and the victim during the argument, placing his body between the two of them. Defendant, however, spun around Shavers and went towards the victim. Contrary to defendant's version in which another of defendant's friends, Percy, supposedly argued with the victim moments before the shooting, by Shavers' account it was Percy who tried to dissuade defendant from his course of action. Percy, according to Shavers, tried to pull defendant away from the scene, telling defendant that "it ain't even worth it."

The witnesses testified that defendant pulled a handgun from his waistband area and pointed it at the victim. By all accounts, the victim was unarmed, had his back to defendant and was retreating when defendant drew his gun and aimed it at the victim's head. The gun did not immediately fire, but clicked twice before firing three times. The physical evidence revealed that the victim was shot in the back.

This evidence notwithstanding, defendant's testimony was also contradicted by the rebuttal testimony of Dion Allison, defendant's fellow gang member who, contrary to defendant's testimony, stated that he was not engaged in an argument with the victim on the day of the shooting and that he did not give defendant, whose nickname was "Larry G.," his gun to place in defendant's locker.

●1 In this case, the evidence of defendant's guilt was overwhelming. Defendant was seen by no fewer than four people attacking the unarmed victim, even after the two were separated. The facts here do not suggest that the jury would have reached a different result had defendant been allowed to elaborate on his conversation with his sister. In light of the foregoing, we find that defendant was not prejudiced by the trial court's refusal to allow defendant to testify in detail about his conversation with his sister the day before the shooting.

Defendant's second argument with respect to his self-defense claim is that the trial court improperly restricted defense counsel's cross-examination of Assistant State's Attorney Raymond Brogan. Brogan was the assistant State's Attorney who reviewed defendant's case after defendant was arrested.

It is within the trial court's discretion to regulate the extent of inquiry on cross-examination. (*People v. Sandoval* (1990), 135 Ill. 2d 159, 552 N.E.2d 726.) A reviewing court will not reverse the trial court's limitation on cross-examination absent an abuse of discretion which results in manifest prejudice to the defendant. The latitude permitted on cross-examination is within the sound discretion of the trial court. *Sandoval*, 135 Ill. 2d at 194.

Brogan was called by the State as a rebuttal witness. On cross-examination, defense counsel made the following inquiry:

"Q. He did not tell you he was looking for Dartagnan, did he?

A. No, I don't think he told me that.

Q. He didn't tell you that he wanted to shoot Dartagnan, did he?

MR. BROGAN [Assistant State's Attorney]: Objection, Judge.

THE COURT: Objection sustained. You can't go through a whole litany of what someone didn't say."

●2 We find defendant's argument without merit. It is permissible for a witness to testify as to what he observed and as to what he heard. Here, however, defense counsel's first and second questions asked the witness to testify as to what the witness did *not* hear and did *not* observe. The trial court did not abuse its discretion and properly limited the scope of cross-examination of assistant State's Attorney Brogan. See *People v. Smith* (1970), 127 Ill. App. 2d 199, 207, 262 N.E.2d 165.

Defendant's next argument with respect to his self-defense claim is that the trial court improperly excluded the testimony of defendant's English teacher, Dorothy Darien, regarding an incident between defendant and some other boys in Darien's class, which occurred five months before the shooting. The trial court granted the State's motion *in limine* seeking to bar Darien's testimony.

Defendant contends that this evidence was relevant and probative of the issue of his state of mind at the time of the shooting. He further argues that the exclusion of "similar evidence" was found by this court to constitute reversible error in *People v. Williams* (1977), 45 Ill. App. 3d 338, 359 N.E.2d 736.

Our pronouncement in *Williams* does not support defendant's assertion. In *Williams*, the defendant, testifying on his own behalf, attempted to explain why, at his attackers' orders, he walked towards

his attackers rather than away from them. (*Williams*, 45 Ill. App. 3d at 341.) The trial court sustained the State's objection to the defendant's testimony. *Williams*, 45 Ill. App. 3d at 342.

Had the trial court permitted the testimony, Williams would have testified that the reason he returned to the boys was because he was afraid he would be pursued and hurt in the same manner as another group had done days earlier. (*Williams*, 45 Ill. App. 3d at 343.) Williams' testimony would have further shown that he had been robbed or assaulted more than a dozen times and had been seriously wounded by a knife or gunshots at least three or four times. (*Williams*, 45 Ill. App. 3d at 343.) In light of this evidence, this court found that the trial court erred in restricting the examination of the defendant because the testimony was relevant in determining the reasonableness of his belief in his affirmative defense of self-defense.

The instant case is wholly inapposite to *Williams*. Defendant here was not pursued by a group of boys nor did the victim invade defendant's classroom to taunt or harass him. Moreover, in this case defendant's testimony as to his reasonable belief was not barred by the trial court. The jury heard defendant's explanation that defendant feared that the victim was about to pull out a gun. Here, defendant testified as to his state of mind at the time he shot the victim.

Our review of the record reveals no abuse of discretion. Relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of that action more probable or less probable than it would be without the evidence. (*People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295.) It is within the sound discretion of the trial court to determine the relevancy of evidence, and a reviewing court will not disturb the trial court's determination absent an abuse of discretion. *People v. Gonzalez* (1991), 142 Ill. 2d 481, 489-90, 568 N.E.2d 864; *People v. Kolichman* (1991), 218 Ill. App. 3d 132, 146, 578 N.E.2d 569.

●3 The incident to which Darien would have testified involved a group of unidentified boys coming into Darien's classroom, removing defendant's glasses and stepping on them. The incident did not involve the victim and occurred five months prior to the shooting. This evidence was not relevant to defendant's self-defense claim and was properly excluded by the trial court.

We also find that the trial court did not abuse its discretion in granting the State's motion to bar the testimony of Dr. Julius Menacker. Defendant argues that Dr. Menacker's sociological studies would have shown that because of the serious gang problem in Chicago public schools, students no longer feel safe in the school environment. Defendant asserts that Dr. Menacker's testimony was also relevant as to his state of mind at the time of the shooting.

The admissibility of expert testimony lies within the sound discretion of the trial court, and a reviewing court will not overturn a trial court's determination absent an abuse of discretion. (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569; *People v. Steffens* (1991), 208 Ill. App. 3d 252, 263, 566 N.E.2d 569.) "The indicia of expertise is not a given level of academic qualifications, but whether the expert has knowledge and experience beyond the average citizen which would assist the jury in evaluating the evidence." *Steffens*, 208 Ill. App. 3d at 263.

●4 In this case, the evidence offered by defendant's expert would not have assisted the trier of fact in ascertaining defendant's state of mind at the time of the shooting. The fact that teachers and students do not feel safe in Chicago public schools may or may not be a fact beyond the knowledge of the average citizen. However, we fail to see how Dr. Menacker's general, sociological explanation would have assisted the jury's determination as to *this* defendant's state of mind at the time he shot the victim. The trial court did not abuse its discretion in granting the State's motion *in limine* as to this evidence.

●5 We have examined defendant's contentions regarding his state of mind evidence. Assuming, *arguendo*, that defendant's state of mind was that he believed the victim to be armed, that he did not tell assistant State's Attorney Brogan that he wanted to shoot the victim, that defendant had been assaulted months before the incident by other boys at school, and that defendant did not feel safe at school, the overwhelming evidence is that the victim was shot in the back as he retreated from an altercation with defendant. These facts, given their fullest weight, do not justify defendant's conduct or relieve him of criminal responsibility for shooting the victim.

Defendant next argues that certain prosecutorial remarks made during closing argument were prejudicial and denied him a fair trial.

During closing argument, the prosecutor made the following statement:

> "Ladies and gentlemen of the jury, Dartagnan Young is a hero. He went to school. He wanted to get an education. He wanted to play basketball."

Defense counsel's objection to the State's characterization was sustained. The prosecutor continued his remarks stating, "when [the victim] was intimidated by the defendant, he stood up to that gang intimidation, and he died a hero's death." Defense counsel's second objection to this statement was overruled. Defendant argues that this further comment was unfairly prejudicial.

The law is well settled that prosecutors are afforded great latitude

in making closing arguments. (*People v. Morgan* (1986), 112 Ill. 2d 111, 132, 492 N.E.2d 1303.) In reviewing allegations of prosecutorial misconduct, the closing arguments must be examined in their entirety and allegedly improper statements must be placed in proper context. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970.) To merit reversal, the prosecutorial remarks must result in substantial prejudice to the accused, such that the verdict would have been different had the improper comment not been made.

•6 We find that the prosecutor's reference to the victim having "died a hero's death" during his closing arguments did not unfairly prejudice defendant. Arguments and statements based upon the facts in evidence, or upon reasonable inferences drawn therefrom, are within the scope of proper argument. *People v. Terry* (1984), 99 Ill. 2d 508, 517, 460 N.E.2d 746.

Here, the evidence showed that defendant was a member of a gang and witnesses testified that the victim expressed his distaste and disrespect for gangs to defendant, moments before defendant shot the victim. The victim was not a member of a gang and he played basketball. At best, the prosecutor's characterization of the victim as a hero is enigmatic. The evidence in this case focused on the actions of defendant, not the hero status of the victim. Thus, it is highly unlikely that the jury's verdict was in any way affected by the comments of the prosecutor.

Defendant also argues that it was error for the prosecutor, during rebuttal argument, to state that defendant was trying to "get off the hook" if he were found guilty of second degree murder and that to accept defendant's affirmative defense and find him guilty of second degree murder would, in effect, "cut him loose."

•7 While we believe the prosecutor's remarks were ill-conceived, we do not believe, based on the evidence, that they resulted in prejudice so as to deny defendant a fair trial. Defendant's theory was that he shot the victim in self-defense. However, there was uncontroverted evidence from several witnesses that the victim was unarmed and shot in the back as he turned away from defendant. Nothing in the record suggests the prosecutor's statement unfairly prejudiced defendant such that we could conclude that the verdict would have been different had the remark not been made.

We now address defendant's argument that the trial court erred in failing to submit his proposed jury instruction No. 4 to the jury. Defendant's proposed jury instruction No. 4 stated:

> "Where a person was initially justified in the use of force, it is incumbent upon the State to prove that a sufficient time interval passed between the initial wound and subsequent wound which

would have allowed that person[,] acting as a reasonable person[,] to believe that no further force was necessary."

Defendant's proposed instruction was a non-Illinois Pattern Jury Instruction (IPI). He contends that his proposed instruction was an important supplement on the self-defense issue and would have aided the jury in its consideration of the issue.

In Illinois, courts give preference to the applicable IPI instructions over non-IPI instructions. (*People v. Santiago* (1987), 161 Ill. App. 3d 634, 515 N.E.2d 228.) Illinois Supreme Court Rule 451(a) provides that the applicable IPI instruction should be given unless it does not accurately state the law. (134 Ill. 2d R. 451(a).) However, the instructions may be modified or supplemented when the facts of a particular case make them inadequate. (*People v. Mitchell* (1984), 129 Ill. App. 3d 189, 472 N.E.2d 114.) It is within the trial court's sound discretion to determine whether non-IPI instructions should be given to the jury. (*People v. Brooks* (1989), 185 Ill. App. 3d 935, 542 N.E.2d 64.) An abuse of discretion occurs where a trial court's refusal to tender the non-IPI instruction results in a failure to instruct the jury as to the defendant's theory of the case. Defendant's theory must be supported by some evidence. *Brooks*, 185 Ill. App. 3d at 942.

The IPI instruction on the issue of self-defense given in this case states:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

●8 The IPI instruction is a correct statement of the law of self-defense in this State. (See Ill. Rev. Stat. 1991, ch. 38, par. 7—1.) Defendant's proposed instruction places the burden on the State to show that there was a sufficient interval between the initial wound and the subsequent shots fired at the victim for defendant to realize, acting as a reasonable person, that no further force was necessary.

However, no evidence adduced at trial supports defendant's instruction. In fact, there is no suggestion that the initial use of force was justified. Defendant testified on cross-examination that he never saw the victim with a gun. Defendant started firing when he saw the victim "reach into his clothes." The victim was walking away from defendant as defendant pointed the gun and pulled the trigger. The gun clicked twice before actually firing. We fail to find any evidence to support defendant's contention that the IPI instruction on the issue of self-defense was inadequate.

Defendant's next contention is that the trial court erred in denying his motion to suppress oral statements. Defendant contends that the trial court made mistakes in recalling the testimony regarding the participation of the youth officer assigned to his case during questioning, and that the trial court improperly shifted the burden of proving the voluntariness of defendant's waiver of his right not to make statements.

The standard for reviewing a trial court's determination that a defendant's statement was voluntary is whether that determination is against the manifest weight of the evidence. (*People v. Reid* (1990), 136 Ill. 2d 27, 56, 554 N.E.2d 174.) The State has the burden of proving, by a preponderance of the evidence, that a defendant made a knowing, intelligent and voluntary waiver of his rights. (*Reid,* 136 Ill. 2d at 51.) Once the State has made its *prima facie* case, the burden shifts to the defendant to show that he did not make a knowing, intelligent and voluntary waiver. (*Reid,* 136 Ill. 2d at 51.) In determining whether a statement was voluntarily made, the court must consider the totality of the circumstances. *Reid,* 136 Ill. 2d at 54.

•9 We cannot find, after reviewing the record, that the trial court's ruling that defendant's statements were voluntary was against the manifest weight of the evidence. The evidence at the hearing showed that defendant's case was processed pursuant to the law. (See Ill. Rev. Stat. 1991, ch. 37, par. 805—6(2).) Detective Brian Regan of the Area One violent crimes unit of the Chicago police department testified on the motion to suppress that Lieutenant Shaw, the commander of the youth division, informed him that defendant had been given his *Miranda* rights. Based on this testimony, the trial court stated that "Lieutenant Shaw *** had advised the defendant of his rights with respect to making a statement, either he himself or someone under him." Defendant argues that the trial court's statement was erroneous because neither Lieutenant Shaw nor anyone else from the youth division testified at the hearing.

However, our review of the record reveals that there was sufficient evidence for the trial court to conclude that defendant was administered *Miranda* rights several times during the processing of his case and prior to making statements to assistant State's Attorney Brogan. Furthermore, he was allowed to consult with his mother prior to making any statement to assistant State's Attorney Brogan.

We also do not find that the trial court improperly shifted the burden of proving the voluntariness of the waiver. In denying the motion to suppress statements, the trial court stated, in relevant part:

"[I]n order to remove the confession as evidence from the prosecution of the case something more than a simple disclaimer is necessary; that is, the defendant must then establish that the claim that he had an admission is a false claim or that if he made an admission it was made involuntarily."

●10 This statement by the court was made after it reviewed and summarized the evidence before it. It is the trial court's responsibility to scrutinize the witnesses' credibility and weigh the evidence. (*Reid*, 136 Ill. 2d at 57.) Having done so the trial court found that "it would strain one's credulity to believe that the testimony of the detectives and the assistant state's attorney was contrived." Thus, the trial court determined that the State had made its *prima facie* case that defendant made a knowing, intelligent and voluntary waiver of his rights. The record does not suggest that the burden of proving the voluntariness of defendant's waiver was improperly shifted to defendant.

We find defendant's cited authorities on this issue distinguishable. In *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143, the defendant was convicted of robbery after a bench trial. Defendant stated that his alibi for the time of the robbery was that defendant was looking for, but could not find, a gas station in a particular part of the City of Chicago. The trial court, in finding the defendant guilty, stated it knew for a fact that there were gas stations on the particular stretch of road defendant described. Our supreme court correctly held that it was error for the trial court to make a determination based on its personal knowledge. *Wallenberg*, 24 Ill. 2d at 354.

In this case, however, the trial court did not improperly consider evidence based on its personal knowledge. Thus, *Wallenberg* has no application to the facts in this case.

In *People v. Jones* (1974), 18 Ill. App. 3d 198, 309 N.E.2d 776, the trial court, in a bench trial, considered statements made by a defendant's co-felon which were not admitted at trial. In the case at bar, contrary to defendant's contention, it does not appear that the trial court, in denying the motion to suppress statements, considered facts not in evidence. The trial court's determination did not rely solely on its impression of a specific piece of evidence, but on the totality of the circumstances of all the evidence presented.

Defendant next argues that the trial court sentenced him to 40 years' imprisonment based on its allegedly erroneous belief that the maximum term to which defendant could be sentenced was 60 years' imprisonment.

At the sentencing hearing, the State requested that defendant be sentenced to life in prison without parole. The trial court reviewed

the facts in evidence, summarized those facts, noted that a guilty verdict was returned in less than one hour and stated that the evidence of defendant's guilt beyond a reasonable doubt was "overwhelming." The trial court determined that "nothing mitigates" against defendant's crime, and characterized it as "wilful" and "vicious."

The trial court then discussed the new, maximum nonextended sentence for murder which, effective January 1, 1988, increased the maximum sentence from 40 to 60 years' imprisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1)):

"We had stated on the record in this Court, over a period of 10 years, that the maximum penalty provided for sentencing in nonexceptional—you might say non-exceptional—murder cases, was inadequate as, indeed, it was in the great many cases. And finally, a couple of years ago, the Legislature increased the maximum penalty for first degree murder cases from 40 to 60 years, which was long overdue.

So, the defendant here, aside from what the State has pointed out and urged the Court to do, could be sentenced to 60 years in prison for this—or murder, and certainly no injustice would be done, if that were the case.

But considering again, his age and prior lack of violent acts or criminal acts, the Court has determined that the appropriate sentence is, and the Court, hereby, sentences the defendant, Larry Sims, to a term of 40 years in the [p]enitentiary system of the Illinois Department of Corrections."

The State argues that the trial court's statement that defendant could be sentenced to 60 years' imprisonment was taken out of context; that the court was merely stating what could be done if the circumstances were present in defendant's case. We assume by "circumstances" the State interprets the trial court's remark to mean that the 60-year maximum penalty would have been an option had the incident in this case occurred after January 1, 1988. The State further argues that what the trial court considered, in fact, was an extended-term sentence (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(1)) which led the trial court to consider factors in aggravation and mitigation before arriving at the 40-year sentence.

While the State's argument is plausible, it fails to dispel the uncertainty surrounding the trial court's reasoning demonstrated by this record. The trial court made no reference whatsoever to an extended-term sentence and, except for the State's interpretation of the trial court's statements, we are left to define what the trial court's reference to the new maximum sentence could have meant.

●11 At the time of the offense, the maximum nonextended

sentence for murder was 40 years' imprisonment. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1).) While Public Act 85—902, which increased the maximum sentence for murder to 60 years' imprisonment, was on the books the year the offense was committed, it did not become effective until January 1, 1988, three months after the shooting in this case. Thus, the trial court's statement as to the sentence it could impose, other than sentencing defendant to life in prison, leads us to conclude that the trial court may have erroneously considered the new maximum sentence as a reference for its decision to sentence defendant to 40 years' imprisonment. (See *People v. Eddington* (1979), 77 Ill. 2d 41, 48, 394 N.E.2d 1185.) We are compelled, therefore, to remand this case to the circuit court for a reconsideration of defendant's sentence.

Defendant's final contention is that the trial court abused its discretion in sentencing him to 40 years' imprisonment, arguing that the sentence is excessive and was made without regard to his rehabilitative potential. We need not address this issue since we have determined that this case should be remanded to the circuit court for a new sentencing hearing.

Affirmed and remanded.

HARTMAN and SCARIANO, JJ., concur.