**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240669-U

Order filed February 9, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0669 Circuit No. 22-CM-1638 |
| | ) | |
| ANGEL J. WILMER, | ) ) | Honorable Jill Otte, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Brennan and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The circuit court's exclusion of improper state-of-mind testimony was not an abuse of discretion. (2) The defendant's convictions for battery violated the one-act, one-crime rule.

¶ 2    The defendant, Angel J. Wilmer, appeals her battery convictions, arguing that (1) the Du Page County circuit court denied her a meaningful opportunity to present a complete defense by excluding relevant evidence concerning her state of mind and (2) her convictions violate the one-act, one-crime rule.

¶ 3                                    I. BACKGROUND

¶ 4           Following a jury trial,[1] the defendant was convicted of two counts of battery (720 ILCS 5/12-3(a)(1), (2) (West 2022)). Count I alleged that the defendant knowingly and without legal justification, caused bodily harm to Cheryl Barriga by scratching Barriga about the face. Count II similarly alleged that the defendant made physical contact of an insulting or provoking nature when she scratched Barriga about the face.

¶ 5           Relevant to this appeal, the evidence presented at trial established that on September 27, 2022, the defendant was employed as a rideshare driver and had transported a patient to a dialysis clinic where Barriga was employed as a nurse. Upon arrival, the defendant walked through the vestibule at the front entrance and entered the lobby, where she informed Barriga that the patient needed assistance getting out of the defendant's vehicle and into the clinic. Barriga explained that it was against clinic policy for staff to exit the building and that she would need to contact the patient's nursing home to verify that the patient had tested negative for COVID-19. The defendant waited in the lobby while Barriga called the nursing home.

¶ 6           Barriga testified that after calling the nursing home, she was instructed by the clinic's administrator to assist the patient in exiting the defendant's vehicle. Barriga then returned to the lobby accompanied by Robin Varughese, a clinic technician. The defendant was upset and raised her voice as she told Barriga that she was late for work and might lose her other job because Barriga had refused to take the patient immediately upon arrival. The defendant stated that she was going to call the police and pointed her finger near Barriga's face. Barriga raised her hand to protect herself and told the defendant to stop pointing. After advising the defendant that they would assist

_____

[1]A six-person jury was impaneled at the defendant's request.

2

the patient out of her vehicle, Barriga and Varughese followed the defendant out of the lobby and into the front entrance vestibule. While inside the vestibule, the defendant hit Barriga in the face. Barriga's glasses fell off when the defendant hit her and she sustained a scratch below her right eye.

¶ 7         Surveillance video from the clinic showed that as the defendant approached the front door to exit the building, she turned and struck Barriga in the face. The defendant then lunged forward at Barriga and continued trying to hit her as Barriga backed away. Varughese moved in front of Barriga to block the defendant and Barriga exited the vestibule back into the lobby. Barriga briefly reentered the vestibule and grabbed her glasses as Varughese continued to stand in between her and the defendant.

¶ 8         The defendant testified that while she waited in the lobby for Barriga to contact the nursing home, another clinic employee assisted the patient in exiting her vehicle. When Barriga and Varughese returned to the lobby, they reiterated to her that they could not assist with helping the patient exit her vehicle because it was against clinic policy. The defendant indicated she was annoyed because the patient was already out of her vehicle and she was late for work. As she turned to leave, Barriga and Varughese followed her into the vestibule. Barriga raised her hand and pointed her finger at the defendant. The defendant testified that she felt threatened and potentially in danger. Barriga's outstretched finger struck the rim of the defendant's glasses, and she reacted by hitting Barriga in self-defense. Once the altercation ended, the defendant returned to her vehicle and called the police. In police body camera footage, the defendant indicated she wanted to press charges against Barriga and stated that she had injured Barriga while acting in self-defense.

3

¶ 9        During the defendant's direct testimony, she was asked if she had been involved in any prior "domestic incident[s]" earlier that year. The defendant answered affirmatively and said that she was a former victim of domestic violence. The State objected based on relevance. Defense counsel argued the testimony was relevant, as it related to the defendant's state of mind at the time of the charged offenses. The court sustained the objection.

¶ 10        The jury subsequently found the defendant guilty of two counts of battery and the court imposed concurrent one-year terms of court supervision for each conviction. The defendant filed a motion for a new trial, arguing, *inter alia*, that the court erred in sustaining the State's objection to her testimony regarding her history as a domestic violence survivor. The court denied the motion.

¶ 11                                    II. ANALYSIS

¶ 12                              A. State-of-Mind Testimony

¶ 13        On appeal, the defendant first contends that the circuit court erred when it sustained the State's objection to her testimony about her involvement with any prior domestic violence incidents. The defendant argues her purported history as a domestic violence survivor was relevant to her claim of self-defense because it demonstrated her state of mind at the time of the occurrence and that barring this evidence deprived her of her constitutional right to have a meaningful opportunity to present a complete defense.

¶ 14        When a defendant alleges that she acted in self-defense, she is entitled to present evidence concerning her state of mind to demonstrate that she reasonably believed that the force she used was necessary to protect herself. See *People v. Damnitz*, 269 Ill. App. 3d 51, 59 (1994). Although prior encounters with the victim may be relevant to show a defendant's state of mind when asserting self-defense, testimony of unrelated encounters with individuals that are not involved

4

with the occurrence at issue, "would open the door to irrelevant, collateral and unconnected matters." *People v. Ruel*, 120 Ill. App. 2d 374, 379 (1970). Proffered evidence may be rejected as irrelevant when it provides little probative value due to remoteness, uncertainty, or potential prejudice. *People v. Booker*, 274 Ill. App. 3d 168, 171 (1995). Determinations regarding the relevancy of evidence are within the sound discretion of the circuit court and will not be overturned absent a clear showing of an abuse of discretion. *Id.*

¶ 15     Here, the defendant contends that testimony regarding her experience as a victim of domestic violence was relevant to show her state of mind at the time of the offense. However, any testimony the defendant would have provided regarding prior domestic violence was wholly unrelated to the incident in question and did not involve Barriga or Varughese. As the defendant's former relationship with an unknown individual has no nexus to the event in controversy, it is purely a collateral matter that lacks probative value. See *Ruel*, 120 Ill. App. 2d at 379 (evidence of relationships with others not involved in the instant action is inadmissible as it is not confined to the matters at issue under the general rule of relevancy). Therefore, the circuit court did not abuse its discretion by excluding this evidence as it was not relevant to the defendant's self-defense claim. See *People v. Sims*, 265 Ill. App. 3d 352, 359 (1994).

¶ 16     Furthermore, the jury heard the defendant's testimony as to why she believed her use of force was necessary to defend herself at the time the incident occurred. The defendant testified to her state of mind when she struck Barriga, indicating that she felt threatened and potentially in danger after Barriga raised her hand and pointed a finger at her. Accordingly, the circuit court's ruling did not prevent the defendant from presenting a complete defense. See *id.* (excluding testimony regarding an unrelated incident where the victim was not involved did not prevent

5

defendant from presenting a complete defense where defendant testified as to his state of mind concerning his fear of the victim at the time of the offense).

¶ 17                                B. One-Act, One-Crime Rule

Next, the defendant argues that her convictions violate the one-act, one-crime rule because they are based on the same physical act: scratching Barriga about the face. The defendant requests plain error review of the issue, as she did not previously raise it before the circuit court. The State concedes that the defendant's less serious battery offense should be vacated. Violations of the one-act, one-crime rule affect the integrity of the judicial process and are therefore reviewable under the second prong of the plain error doctrine. *People v. Smith*, 2019 IL 123901, ¶ 14. The first step in plain error review is to determine whether an error occurred. *Id.*

¶ 18        Multiple convictions predicated on the same physical act are barred under the one-act, one-crime rule. *People v. Coats*, 2018 IL 121926, ¶ 11. If more than one conviction is based on the same physical act, a sentence should be imposed for the most serious offense and the lesser offenses should be vacated. *People v. Artis*, 232 Ill. 2d 156, 170 (2009). Whether a defendant's convictions violate the rule is a matter of law that is reviewed *de novo*. *Smith*, 2019 IL 123901, ¶ 15.

¶ 19        The defendant was convicted of two counts of battery based on the same physical act of scratching Barriga's face. Of the two convictions, battery causing bodily harm (count I) is the most serious offense. See *People v. Young*, 362 Ill. App. 3d 843, 853 (2005) (holding a battery conviction for causing bodily harm is more serious than a battery conviction based on insulting or provoking contact). We accept the State's concession that count II should be vacated pursuant to the one-act, one-crime rule. See *People v. Williams*, 2017 IL App (3d) 140841, ¶ 33. Accordingly,

6

we affirm the defendant's conviction as to count I and vacate the defendant's conviction as to count II.

¶ 20                                    III. CONCLUSION

¶ 21        The judgment of the circuit court of Du Page County is affirmed in part and vacated in part.

¶ 22        Affirmed in part and vacated in part.